# 12-1723-cv

## United States Court of Appeals
### *for the*
### Second Circuit

---

SECURITIES AND EXCHANGE COMMISSION,
*Plaintiff-Appellee*,

v.

JOSEPH CONTORINIS,
*Defendant-Appellant*.

---

*On Appeal from the United States District Court
for the Southern District of New York*

---

**REPLY BRIEF OF DEFENDANT-APPELLANT JOSEPH CONTORINIS**

---

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
Phone: (212) 373-3000
Fax: (212) 757-3990

Theodore V. Wells, Jr.
   twells@paulweiss.com
Mark F. Pomerantz
   mpomerantz@paulweiss.com
Roberto Finzi
   rfinzi@paulweiss.com
Farrah R. Berse
   fberse@paulweiss.com

*Attorneys for Defendant-Appellant Joseph Contorinis*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................ iii

INTRODUCTION ............................................................................................. 1

ARGUMENT ..................................................................................................... 3

I.     THE DISTRICT COURT ERRED IN ORDERING MR. CONTORINIS
TO DISGORGE PROFITS HE NEVER RECEIVED, ENJOYED, OR
CONTROLLED. ......................................................................................... 3

     A.    Disgorgement Is an Equitable Remedy that Can Only Be Used to
Redeem a Defendant's Own Ill-Gotten Gains. ........................................... 3

     B.    Mr. Contorinis Was Not a Tipper and Cannot Be Ordered to
Disgorge the Fund's Profits on the Basis that the Fund Was a
Tippee. ..................................................................................................... 11

     C.    The Narrow Scope of the Court's Equitable Powers Limits the
Scope of Disgorgement. ........................................................................... 15

     D.    The Disgorgement Ordered Here Is Not Justified By Any Policy
Considerations. ........................................................................................ 17

          1.    Mr. Contorinis Should Not Be Ordered to Disgorge $7.26
Million Due to Any Purported "Reputational" Benefit............. 17

          2.    The Disgorgement Ordered Here Is Not the Result of
"Uncertainty" that Should Be Construed in Favor of the
Commission............................................................................. 19

          3.    Reversal of the Disgorgement Order Will Not "Nullify" the
Prohibition Against Insider Trading......................................... 19

II.    THE DISTRICT COURT ERRED WHEN IT ORDERED  MR.
CONTORINIS TO PAY PREJUDGMENT INTEREST IN THE
AMOUNT OF $2.485 MILLION............................................................ 20

     A.    Mr. Contorinis Did Not Waive His Prejudgment Interest
Arguments................................................................................................ 20

**TABLE OF CONTENTS**
(Continued)

**Page**

B.   It Was an Abuse of Discretion to Order Mr. Contorinis to Pay Prejudgment Interest on Profits He Never Received, Controlled, or Enjoyed. ........................................................................... 22

C.   It Was an Abuse of Discretion to Order Mr. Contorinis to Pay Prejudgment Interest on Money Held by the Government as Bail. ...... 24

III.   THE DISTRICT COURT ERRED IN ENTERING A PERMANENT INJUNCTION. ............................................................................. 25

CONCLUSION ............................................................................. 27

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Dirks* v. *SEC*,
463 U.S. 646 (1983)............................................................................ 8, 17

*Elkind* v. *Liggett & Myers, Inc.*,
472 F. Supp. 123 (S.D.N.Y. 1978) .................................................... 22, 23

*Elkind* v. *Liggett & Myers, Inc.*,
635 F.2d 156 (2d Cir. 1980) ............................................................. 12, 13

*Great Am. E & S Ins. Co.* v. *Hartford Fire Ins.Co.*,
No. 09 Civ. 10010 (PAC)(GWG), 2012 WL 3186086
(S.D.N.Y. Aug. 9, 2012).......................................................................... 21

*Grupo Mexicano de Desarrollo, S.A.* v. *Alliance Bond Fund, Inc.*,
527 U.S. 308 (1999) ................................................................................ 15

*Hateley* v. *SEC*,
8 F.3d 653 (9th Cir. 1993) ..................................................................... 4, 9

*In re Melridge, Inc. Sec. Litig.*,
837 F. Supp. 1076 (D. Or. 1993) ............................................................. 22

*Newby* v. *Enron Corp.*,
188 F. Supp. 2d 684 (S.D. Tex. 2002)..................................................... 16

*Official Comm. of Unsecured Creditors of WorldCom, Inc.* v. *SEC*,
467 F.3d 73 (2d Cir. 2006) ........................................................................ 6

*Pereira* v. *Farace*,
413 F.3d 330 (2d Cir. 2005) ...................................................................... 4

*Rolf* v. *Blyth, Eastman Dillon & Co., Inc.*,
637 F.2d 77 (2d Cir. 1980) ................................................................. 22, 23

*SEC* v. *Aragon Capital Mgmt., LLC*,
672 F. Supp. 2d 421 (S.D.N.Y. 2009) ................................................. 11, 23

iii

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*SEC* v. *Aragon Capital Mgmt., LLC*,
　No. 07 Civ. 919(FM), 2010 WL 517586
　(S.D.N.Y. Jan. 29, 2010)............................................................ 24

*SEC* v. *Banner Fund Int'l*,
　211 F.3d 602 (D.C. Cir. 2000).................................................... 9

*SEC* v. *Bausch & Lomb Inc.*,
　565 F.2d 8 (2d Cir. 1977) ........................................................ 25

*SEC* v. *Blackwell*,
　477 F. Supp. 2d 891 (S.D. Ohio 2007) ............................... 11, 23

*SEC* v. *Cavanagh*,
　445 F.3d 105 (2d Cir. 2006) ........................................... 6, 15, 16

*SEC* v. *Clark*,
　915 F.2d 439 (9th Cir. 1990) ............................................ 12, 17

*SEC* v. *Commonwealth Chem. Sec., Inc.*,
　574 F.2d 90 (2d Cir. 1978) ...................................................... 25

*SEC* v. *Contorinis*,
　No. 09 Civ. 1043(RJS), 2012 WL 512626 (S.D.N.Y. Feb. 3, 2012) ...... 18

*SEC* v. *Drucker*,
　528 F. Supp. 2d 450 (S.D.N.Y. 2007) ............................... 11, 23

*SEC* v. *First Jersey Sec., Inc.*,
　101 F.3d 1450 (2d Cir. 1996) ........................................ 3, 5, 13

*SEC* v. *Global Express Capital Real Estate Inv. Fund, I, LLC*,
　289 F. App'x 183 (9th Cir. 2008) .............................................. 4

*SEC* v. *Gowrish*,
　No. C 09-05883 SI, 2011 WL 2790482
　(N.D. Cal. July 14, 2011)........................................... 4, 11, 23

iv

# TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*SEC* v. *Grossman*,
    No. 87 Civ. 1031 (SWK), 1997 WL 231167 (S.D.N.Y. May 6, 1997)... 23

*SEC* v. *Hirshberg*,
    Nos. 97-6171, 97-6259, 1999 WL 163992
    (2d Cir. Mar. 18, 1999) ........................................................................ 11, 13

*SEC* v. *Hughes Capital Corp.*,
    124 F.3d 449 (3d Cir. 1997) .................................................................... 13

*SEC* v. *Jones*,
    476 F. Supp. 2d 374 (S.D.N.Y. 2007) ........................................................ 7

*SEC* v. *Kelly*,
    765 F. Supp. 2d 301 (S.D.N.Y. 2011) ........................................................ 7

*SEC* v. *Levine*,
    517 F. Supp. 2d 121 (D.D.C. 2007) ............................................................ 9

*SEC* v. *Lorin*,
    869 F. Supp. 1117 (S.D.N.Y. 1994) ............................................................ 3

*SEC* v. *McGee*,
    895 F. Supp. 2d 669 (E.D. Pa. 2012) ........................................................ 14

*SEC* v. *Michel*,
    521 F. Supp. 2d 795 (N.D. Ill. 2007) .................................................... 11, 24

*SEC* v. *Moran*,
    944 F. Supp. 286 (S.D.N.Y. 1996) ............................................................ 22

*SEC* v. *Obus*,
    693 F.3d 276 (2d Cir. 2012) .................................................................... 12

*SEC* v. *Patel*,
    61 F.3d 137 (2d Cir. 1995) ........................................................................ 6

v

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*SEC* v. *Reyes*,
  No. C 06-04435 CRB, 2008 WL 3916247 (N.D. Cal. Aug. 25, 2008) ... 26

*SEC* v. *Rosenthal*,
  650 F.3d 156 (2d Cir. 2011) ..................................................................... 11

*SEC* v. *Shapiro*,
  494 F.2d 1301 (2d Cir. 1974) ................................................................. 10

*SEC* v. *Texas Gulf Sulphur Co.*,
  446 F.2d 1301 (2d Cir. 1971) ...................................................... 12, 13, 17

*SEC* v. *Tome*,
  638 F. Supp. 596 (S.D.N.Y. 1986) .......................................................... 12

*SEC* v. *Tome*,
  638 F. Supp. 638 (S.D.N.Y. 1986) .............................................. 12, 17, 23

*SEC* v. *Tome*,
  833 F.2d 1086 (2d Cir. 1987) ..................................................................... 3

*SEC* v. *Warde*,
  151 F.3d 42 (2d Cir. 1998) ..............................................................*passim*

*SEC* v. *Yun*,
  148 F. Supp. 2d 1287 (M.D. Fla. 2001) ............................................... 3, 11

*SEC* v. *Zafar*,
  No. 06-CV-1578 (JG)(MDG), 2009 WL 129492
  (E.D.N.Y. Jan. 20, 2009) ........................................................................ 25

*Sheldon* v. *Metro-Goldwyn Pictures Corp.*,
  106 F.2d 45 (2d Cir. 1939) ........................................................................ 9

*United States* v. *Contorinis*,
  692 F.3d 136 (2d Cir. 2012) ....................................................... 5, 6, 8, 13

vi

**TABLE OF AUTHORITIES**
(Continued)

Page(s)

*United States* v. *Skowron,*
   839 F. Supp. 2d 740 (S.D.N.Y. 2012) ..................................................... 14

*United States* v. *Torres,*
   703 F.3d 194 (2d Cir. 2012) ................................................................. 5, 7

STATUTES

15 U.S.C. § 78u(d)(1) .............................................................................. 25

18 U.S.C. § 981(a)(2)(A) .......................................................................... 7

Defendant-Appellant Joseph Contorinis respectfully submits this reply brief in further support of his appeal from the February 29, 2012 judgment.

## INTRODUCTION

Mr. Contorinis was ordered to disgorge millions of dollars that he never received, controlled, or enjoyed in connection with the insider trading alleged in this case. As set forth in Mr. Contorinis's opening brief, the district court's disgorgement order was therefore fundamentally inconsistent with the purpose of disgorgement, an equitable remedy designed only to return a defendant to his position prior to any wrongdoing. In its opposition, the Commission concedes, as it must, that disgorgement is an equitable remedy, not a penalty. But it goes on to argue that various, inapplicable principles—that a tipper may be liable for his tippee's wrongful profits; that any imprecision in calculation should benefit the Commission; and that intangible, reputational benefits can be disgorged—support the disgorgement ordered here.

None of these arguments has merit. First, Mr. Contorinis was not alleged or found to be a tipper, and any rule that makes a tipper responsible for the downstream tippees' profits does not apply to this case, where there has been no claim that Mr. Contorinis tipped or acted in concert with the fund that received the profits. Second, the disagreement as to the amount of disgorgement here is a legal dispute about the scope of the court's underlying equitable authority, not a dispute

1

about the precision of the court's calculation.  Third, the "intangible benefits" cited by the Commission are not subject to disgorgement in this case.  As a result, nothing in the Commission's opposition changes the fact that the disgorgement ordered in this case exceeded the district court's authority by going beyond what was required to return Mr. Contorinis to the position he was in before the alleged violations occurred.  The order must therefore be reversed.

The district court's error was compounded to the extent that it required Mr. Contorinis to pay $2.485 million in prejudgment interest on amounts that he never received, controlled, or enjoyed.  Prejudgment interest, like disgorgement, is meant to prevent unjust enrichment by ordering a defendant to repay the benefit he received from ill-gotten gains.  But Mr. Contorinis was ordered to pay prejudgment interest on funds that were not his ill-gotten gains.

Finally, the district court erred by entering an injunction without ever making the single required finding that could justify such an injunction—that Mr. Contorinis was likely to commit securities law violations in the future.  For this reason alone, the injunction must be vacated.

2

## ARGUMENT

## I.   THE DISTRICT COURT ERRED IN ORDERING MR. CONTORINIS TO DISGORGE PROFITS HE NEVER RECEIVED, ENJOYED, OR CONTROLLED.

### A.   Disgorgement Is an Equitable Remedy that Can Only Be Used to Redeem a Defendant's Own Ill-Gotten Gains.

The Commission concedes, as it must, that disgorgement is an equitable remedy.  (Opp. at 5 (noting that "[t]his case turns on equitable principles").)  Disgorgement is not punitive or designed to send a message.  It is not about making a victim whole.  Its purpose is simple:  to return a defendant to the status quo that existed prior to any wrongdoing, thus preventing unjust enrichment.  *SEC*  v. *Tome*, 833 F.2d 1086, 1096 (2d Cir. 1987) ("The paramount purpose of enforcing the prohibition against insider trading by ordering disgorgement is to make sure that wrongdoers will not profit from their wrongdoing."); *SEC* v. *Lorin*, 869 F. Supp. 1117, 1122 (S.D.N.Y. 1994) (stating that disgorgement is meant to "return[] the wrongdoer to the status quo before any wrongdoing had occurred"); *SEC* v. *Yun*, 148 F. Supp. 2d 1287, 1290 (M.D. Fla. 2001) ("Courts often note that the primary purpose of disgorgement is the prevention of unjust enrichment—that is, that those who have violated the securities laws are not allowed to gain by their illegal conduct.").

Disgorgement therefore always has—and must—focus on a defendant's ill-gotten gains.  *SEC* v. *First Jersey Sec., Inc*., 101 F.3d 1450, 1475

(2d Cir. 1996) ("[D]isgorgement is a method of forcing a defendant to give up the amount by which *he* was unjustly enriched." (emphasis added)). Indeed, the Commission agrees that the purpose of disgorgement is "to prevent a defendant's unjust enrichment." (Opp. at 33.) The question for the Court—and where the parties differ—is what constitutes Mr. Contorinis's "unjust enrichment" in this case.

Courts have widely held that in order to constitute a defendant's unjust or ill-gotten gains subject to disgorgement, those gains must have been received by the defendant. *See, e.g.*, *SEC* v. *Global Express Capital Real Estate Inv. Fund, I, LLC*, 289 F. App'x 183, 190 (9th Cir. 2008) (unpublished) (concluding that because defendant was not held jointly and severally liable, funds retained by other entities "cannot be considered her personal ill-gotten gains" even though defendant controlled those entities); *Hateley* v. *SEC*, 8 F.3d 653, 655-57 (9th Cir. 1993) (reducing order that defendants disgorge ten times the amount of their unjust enrichment where improper arrangement required 90% of the commissions at issue to be paid to a third party); *see also Pereira* v. *Farace*, 413 F.3d 330, 339 (2d Cir. 2005) (agreeing with defendants that "because they never possessed the funds in question [they] were not unjustly enriched"); *SEC* v. *Gowrish*, No. C 09-05883 SI, 2011 WL 2790482, at \*8 (N.D. Cal. July 14, 2011) (finding that "the amount of defendant's ill-gotten gains, and therefore . . . the

4

amount of unjust enrichment" ordered disgorged was limited to the profits that the defendant "personally earned," or just 3% of the proceeds). The Commission's method of calculating disgorgement in this case violates this simple but fundamental principle, and produces a figure that exceeds Mr. Contorinis's actual gains by 23 times (including interest).

The Commission argues that disgorgement is "fundamentally different" from criminal forfeiture, and that concepts taken from forfeiture law are not relevant to understanding what "unjust enrichment" means in the disgorgement context. (Opp. at 33-34.) The Commission is wrong; both forfeiture and disgorgement focus specifically on the return of a defendant's ill-gotten gains. *Compare United States* v. *Contorinis*, 692 F.3d 136, 146 (2d Cir. 2012) ("Criminal forfeiture focuses on the disgorgement by a defendant of his 'ill-gotten gains.'" (quoting *United States* v. *Kalish*, 626 F.3d 165, 170 (2d Cir. 2010))), *with First Jersey Sec.*, 101 F.3d at 1474 ("The primary purpose of disgorgement as a remedy for violation of the securities laws is to deprive violators of their ill-gotten gains."); *see also United States* v. *Torres*, 703 F.3d 194, 196 (2d Cir. 2012) (describing the purpose of forfeiture as "disgorging a gain"). If anything, and to the extent there are differences between the two concepts, forfeiture has an *additional*, punitive component which may justify broader (but not narrower) application than disgorgement.

Indeed, disgorgement must be limited to a defendant's own gain to avoid having forfeiture's punitive attributes. "Disgorgement merely requires the return of wrongfully obtained profits." *Official Comm. of Unsecured Creditors of WorldCom, Inc.* v. *SEC*, 467 F.3d 73, 81 (2d Cir. 2006) (quoting H.R. Rep. No. 101-616 (1990)). It is not meant to "result in any actual economic penalty." *Id.* (quoting H.R. Rep. No. 101-616 (1990)). Ordering Mr. Contorinis to disgorge $7.26 million—where his profits were, as the government has agreed, only $427,875—produces precisely the kind of penalty that the equitable remedy of disgorgement cannot be used to impose. There is no dispute that Mr. Contorinis did not acquire the $7.26 million he was ordered to disgorge. These monies were not his ill-gotten gains and he was not unjustly enriched by that amount.

Although focused on the scope of the criminal forfeiture statute and its use of the word "acquired," *Contorinis*, 692 F.3d 136, is relevant to the analysis here. While there is no statute governing the equitable remedy of disgorgement, it—just like forfeiture—focuses on the question of what assets were "*acquired*" by a defendant as a result of wrongdoing, making the Court's analysis of the word "acquired" in the forfeiture context relevant to the analysis here. *See, e.g.*, *SEC* v. *Cavanagh*, 445 F.3d 105, 116 (2d Cir. 2006) ("The remedy consists of . . . the amount of money *acquired* through wrongdoing." (emphasis added)); *SEC* v. *Patel*, 61 F.3d 137, 139 (2d Cir. 1995) ("In the exercise of its equity powers, a

6

district court may order the disgorgement of profits *acquired* through securities fraud." (emphasis added)); *SEC* v. *Kelly*, 765 F. Supp. 2d 301, 325 (S.D.N.Y. 2011) ("[B]ecause the disgorgement remedy is remedial, rather than punitive, a court cannot order disgorgement of an amount above that which was wrongfully *acquired*." (emphasis added)); *SEC* v. *Jones*, 476 F. Supp. 2d 374, 386 (S.D.N.Y. 2007) ("Importantly, because disgorgement is remedial and not punitive, a court cannot order disgorgement above the amount wrongfully *acquired*." (emphasis added)).

The Commission therefore misses the point when it argues that *Contorinis* is not relevant here. While not controlling, it is certainly persuasive authority (and at minimum provides instructive guidance) on how to calculate the amount of money that may be redeemed from a defendant, consistent with the purpose of preventing unjust enrichment by depriving a defendant of his ill-gotten gains.[1]

---

[1] *Torres*, 703 F.3d 194, does not limit *Contorinis's* relevance. *Torres* dealt with a separate forfeiture statute that used different language and that by its terms does not apply in insider trading cases. The statute at issue in *Torres* called for forfeiture of "property of any kind obtained directly or indirectly, as a result of the commission of the offense giving rise to forfeiture, and any property traceable thereto, and is not limited to the net gain or profit realized from the offense." 18 U.S.C. § 981(a)(2)(A). Moreover, the defendant in *Torres* was ordered to forfeit the amount that she "saved by duping NYCHA and HUD," 703 F.3d at 196, or, in other words, the amount she "would otherwise have had to pay in rent." *Id.* at 198. Therefore, Torres was, in any event, ordered to forfeit her own ill-gotten gains.

As this Court stated in *Contorinis*,

> "[F]orfeiture" is a word generally associated with a
> person's losing an entitlement . . . [and] the order [of
> forfeiture] includes funds to which appellant was never
> entitled.  Because the "proceeds" . . . were "acquired" by
> the Fund over which appellant lacks control, it is difficult
> to square the statute with the forfeiture order.

692 F.3d at 146.  For the same reasons, it is difficult to square the equitable

purpose of disgorgement—a word also "generally associated with a person's losing

an entitlement"—with an order requiring disgorgement of nearly $7 million above

what Mr. Contorinis was ever entitled to, received, or controlled.

The Commission nonetheless argues that it is equitable to order Mr.

Contorinis to disgorge the Fund's profits because to do so "is in substance no

different than if [Mr. Contorinis] had traded for his own account, receiving the

profits and then [having] given them to [the Fund]."  (Opp. at 24.)  The

Commission cites *Dirks* v. *SEC*, 463 U.S. 646 (1983), in support of this

proposition, but *Dirks* says no such thing.  In *Dirks*, the Court explained that when

examining the question of insider trading liability, "mak[ing] a gift of confidential

information to a trading relative or friend . . . resemble[s] trading by the insider

himself followed by a gift of the profits to the recipient."  *Id.* at 664.  But the same

does not hold true when examining the equitable remedy of disgorgement.  If Mr.

Contorinis traded in his own account, he would have actually "acquired" the profits

and then given them to the Fund; therefore, it would have been equitable to require

8

him to disgorge those profits, regardless of how he chose to spend them. *See, e.g.*, *SEC* v. *Levine*, 517 F. Supp. 2d 121, 139 (D.D.C. 2007) (stating that "[t]he manner in which defendants chose to spend their misappropriations is irrelevant as to" the amount that may properly be ordered to be disgorged (alterations and internal quotation marks omitted)).[2] That is the principle behind the cases like *SEC* v. *Banner Fund International*, 211 F.3d 602 (D.C. Cir. 2000), cited by the Commission, but it is not a principle applicable here.[3]

The Commission cites a number of other factually distinguishable cases in support of its argument. For example, the Commission relies on *SEC* v. *Warde*, 151 F.3d 42 (2d Cir. 1998). As explained in Mr. Contorinis's opening brief, however, Warde was required to disgorge profits of a trust of which he was the sole beneficiary and from an account in his wife's name over which he

---

[2]   The distribution of the Fund's profits in this case was dictated by contract, which Mr. Contorinis had no ability to modify. *See, e.g.*, *Hateley*, 8 F.3d at 655-57 (reducing disgorgement where arrangement required 90% of gains to be paid to a third party); *Sheldon* v. *Metro-Goldwyn Pictures Corp.*, 106 F.2d 45, 51 (2d Cir. 1939) (defendants' unjust gains did not include the profits they were contractually obligated to pass to third parties), *aff'd*, 309 U.S. 390, 409 (1940).

[3]   The Commission cites *Banner Fund* for the proposition that courts "require securities laws violators to disgorge the resulting profits without regard to whether the violator keeps them." (Opp. at 24.) But *Banner Fund*—which is not an insider trading case—does not stand for the broader proposition that a defendant can be ordered to disgorge profits he never controlled or amounts by which he was not unjustly enriched. In *Banner Fund*, the appellant had control over the funds at issue and used them, among other things, to pay his daughter's college tuition and buy a house. 211 F.3d at 607, 616. The court held that the relevant question for disgorgement purposes was the amount by which the defendant was unjustly enriched, not the actual assets retained. *Id.* at 617.

9

exercised complete control. (Br. at 17-18.)  This Court held that the trust and this account were not "truly third parties," 151 F.3d at 49, so that Warde was, in effect, being required to disgorge his own profits.  That is not a novel or controversial concept.  Although in *dicta* this Court also noted that Warde could have been ordered to disgorge these profits even if "fairly characterized as third party profits," *id.*, the Court's reasoning turned on the notion that a tipper may be liable for his tippees' profits—a concept not relevant to this case because Mr. Contorinis was not a tipper.  *See* below at Part I.B.

Similarly, *SEC* v. *Shapiro*, 494 F.2d 1301 (2d Cir. 1974), does not support the disgorgement order entered here.  In *Shapiro*, the defendant only had unrealized profits because he chose not to sell the stock at its high price following the ultimate disclosure of the non-public information.  *Id*. at 1309.  While the defendant was ordered to disgorge profits he never actually realized, the profits— unlike those at issue here—clearly belonged to him.

10

**B.    Mr. Contorinis Was Not a Tipper and Cannot Be Ordered to Disgorge the Fund's Profits on the Basis that the Fund Was a Tippee.**

Tellingly, the Commission fails to cite a single controlling case in which a defendant was ordered to disgorge funds that he, or someone acting jointly with him, did not receive, control, or enjoy.[4]  Instead, the Commission cites case after case which turn on principles permitting tippers to be ordered to disgorge their tippees' profits.  (Opp. at 26 (citing *SEC* v. *Hirshberg*, Nos. 97-6171, 97-6259, 1999 WL 163992 (2d Cir. Mar. 18, 1999) (summary order); *Gowrish*, 2011 WL 2790482, at *7-8; *SEC* v. *Aragon Capital Mgmt., LLC*, 672 F. Supp. 2d 421, 445 (S.D.N.Y. 2009), *vacated in part sub nom. SEC* v. *Rosenthal*, 650 F.3d 156 (2d Cir. 2011); *SEC* v. *Drucker*, 528 F. Supp. 2d 450, 452-53 (S.D.N.Y. 2007); *SEC* v. *Blackwell*, 477 F. Supp. 2d 891, 914 (S.D. Ohio 2007); *Yun*, 148 F. Supp.

---

[4]    The only decision cited by the Commission in which a defendant may have been ordered to disgorge profits that were neither his nor those of individuals acting in concert with him, *SEC* v. *Michel*, 521 F. Supp. 2d 795 (N.D. Ill. 2007), is not binding on this Court.  In any event, although it is not discernible from the opinion, other filings in the case appear to show that the defendant communicated—or tipped—"stock ideas" to his family members and clients on whose behalf he was trading, unlike Mr. Contorinis, who was not a tipper.  *Id.* at 811; *see also, e.g.*, *SEC* v. *Michel*, No. 06 C 3166 (N.D. Ill.), Dkt. No. 56-2 (Michel's affidavit) at ¶ 28 ("I approached my customers about investing in Rhino just as I approached them about investing in other trades."); Dkt. No. 56-5 (Michel's deposition) at 34–47 (discussing how Michel "recommended" Blue Rhino to his family members and clients).  To the extent that *Michel* ordered the defendant to disgorge the profits of discretionary trading on behalf of third parties whom he did not tip, we respectfully submit that it was wrongly decided.

11

2d at 1292; *SEC* v. *Tome*, 638 F. Supp. 596, 617 n.40 (S.D.N.Y. 1986); *SEC* v.

*Tome*, 638 F. Supp. 638, 639-40 (S.D.N.Y. 1986)).[5]) These cases are not

controlling here.  Mr. Contorinis was not a tipper and it has never been alleged—

by the Commission, the U.S. Attorney's Office, or anyone else—that he was.[6]  The

principle on which these cases permitted the disgorgement by a tipper of his

tippees' profits is based on a theory of concerted action between the tipper and

tippee and is therefore not applicable here.  For example, in *SEC* v. *Clark*, 915

F.2d 439 (9th Cir. 1990), on which *Warde* relied, the defendant was ordered to

disgorge his own profits as well as the profits of his tippee, despite the fact that the

---

[5]  The Commission cites other cases for the more general proposition that a
tippee's gains are attributable to his tipper.  These cases have no bearing on the
proper scope of a court's power to order disgorgement. *Elkind* v. *Liggett &
Myers, Inc.*, 635 F.2d 156, 172 (2d Cir. 1980), was a class action dealing with
the question of how to calculate damages that can be recovered by plaintiffs
following a finding that the defendants had wrongfully disclosed inside
information. *SEC* v. *Texas Gulf Sulphur Co.*, 446 F.2d 1301, 1307-08 (2d Cir.
1971), dealt with the question of how to calculate restitution, a very different
remedy from disgorgement.

[6]  Mr. Contorinis did not tip (*i.e.*, communicate) material non-public information
to anyone, and therefore, among other reasons, was not a tipper.  As this Court
has repeatedly held, in order to be liable, "a tipper must (1) tip (2) material non-
public information (3) in breach of a fiduciary duty of confidentiality owed to
shareholders (classical theory) or the source of the information
(misappropriation theory) (4) for personal benefit to the tipper." *SEC* v. *Obus*,
693 F.3d 276, 286 (2d Cir. 2012).  The Commission recognizes the requirement
of such a communication in order for a defendant to qualify as a tipper.  (Opp.
at 28 ("A tipper – *i.e.*, a person who *communicates* material, nonpublic
information to another person") (emphasis added).)

12

tippee was acquitted on charges of insider trading.[7]  The court explained its

rationale in permitting disgorgement under these circumstances:  "Such a rule is a

necessary deterrent to evasion of Rule 10b-5 liability by either: (1) enriching a

friend or relative; or (2) tipping others with the expectation of reciprocity."  *Id.* at

454.  Those rationales (and the rule itself) do not apply here.

      As this Court explained in *Contorinis*, "[t]he extension of forfeiture to

proceeds received by actors in concert with a defendant may be deemed to be

based on the view that the proceeds of a crime jointly committed are within the

possessory rights of each concerted actor."  692 F.3d at 147.  The same reasoning

has been applied in the civil context.  *See, e.g.*, *SEC* v. *Hughes Capital Corp.*, 124

F.3d 449, 455 (3d Cir. 1997) ("Courts have held that joint-and-several liability is

appropriate in securities cases when two or more individuals or entities collaborate

or have close relationships in engaging in the illegal conduct.");  *First Jersey Sec.*,

---

[7]  While the Court need not reach the question here—because Mr. Contorinis was
not alleged to be, and was not, a tipper—we note that neither the Supreme
Court nor this Court in a published opinion has held that a tipper may be
required to disgorge his tippees' profits. As described above, *Elkind*, deals with
calculating damages in a class action suit.  *Texas Gulf Sulfur* deals with
calculating restitution.  *Warde* did not actually involve tipping because the
defendant traded in an account in his wife's name over which he had complete
control and a trust of which he was the sole beneficiary.  *Hirshberg* is not a
published opinion and therefore has no precedential value.  *See* Local Rule
32.1.1(a) ("Rulings by summary order do not have precedential effect.").  In
any event, the relevant discussion in *Hirshberg* is merely a citation to *Warde*,
which, for the reasons discussed above, *see* Part I.A, is not applicable here.

101 F.3d at 1475 (holding that owner-officer who has collaborated in the unlawful conduct of the firm may be held jointly and severally liable with the firm for disgorgement of the unlawful gains received). But again, no one has ever alleged that the Fund was involved in any fraudulent misconduct and therefore its gains are not within the possessory rights of Mr. Contorinis.

The Commission argues that the rationale for ordering Mr. Contorinis to disgorge the Fund's profits is even stronger than in a tipper/tippee situation because Mr. Contorinis made the trades and therefore knew how much money was being earned by the Fund as a result of the alleged tips, whereas a tipper may not know how much the tippee has earned as a result of the tip. The argument makes no sense, in that two general concepts support the tipper/tippee exception to the rule that persons cannot be ordered to forfeit profits they did not receive or enjoy, and neither applies in this case. First, as the Commission concedes, tippers are more liable than tippees because they violate their fiduciary duties when they provide tips. (Opp. at 36.) Second, tipper/tippee liability turns on the notion that the two actors jointly engaged in fraudulent activity.[8]

---

[8]    As discussed in Mr. Contorinis's opening brief, (Br. at 18 n.5), the Commission could have named the Fund or Jefferies as "relief" or "nominal" defendants in order to seek disgorgement from them. *See, e.g.*, *United States* v. *Skowron*, 839 F. Supp. 2d 740, 746 (S.D.N.Y. 2012) (noting that funds the relief defendants were ordered to disgorge "was not money that [the relief defendants were] legally entitled to retain"); *see also SEC* v. *McGee*, 895 F. Supp. 2d 669, 686 (E.D. Pa. 2012) (denying relief defendants' motion to dismiss where SEC, "using a theory of unjust enrichment," sought disgorgement of the relief

14

## C. The Narrow Scope of the Court's Equitable Powers Limits the Scope of Disgorgement.

Disgorgement, as an equitable remedy, must be applied consistently with the narrow scope of a court's equitable powers. In *Grupo Mexicano de Desarrollo, S.A.* v. *Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999), the Supreme Court reviewed a court's power preliminarily to enjoin the transfer of assets before reaching a judgment that the moving party had an interest in those assets. The Supreme Court acknowledged its "traditionally cautious approach to equitable powers," which "leaves any substantial expansion of past practice to Congress," *id.* at 329, and held that a federal court's equity jurisdiction extends only to "remedies which had been devised and . . . administered by the English Court of Chancery at the time of the separation of the two countries." *Id.* at 318 (quoting *Atlas Life Ins. Co.* v. *W.I.S., Inc.*, 306 U.S. 563, 568 (1939)). To determine the extent of its equity jurisdiction, a federal court therefore "must ask . . . whether the relief . . . requested . . . was traditionally accorded by courts of equity." *Id.* at 319.

As demonstrated above, disgorgement has traditionally been limited to a defendant's own ill-gotten gains, or those acquired by a tippee working in concert with the defendant. *See* above at Part I.A.; *see also Cavanagh*, 445 F.3d at

defendants' "ill-gotten" profits that were causally connected to the defendant's insider trading). The Commission chose not to seek relief from the Fund in this case, and the Commission has not addressed this point in its brief.

15

119 (sustaining the disgorgement remedy in a "pump and dump" securities fraud scheme because "the ancient remedies of accounting, constructive trust, and restitution have compelled wrongdoers to 'disgorge'-*i.e.*, account for and surrender *their* ill-gotten gains for centuries" (emphasis added)); *id.* at 120 (discussing how the "rule against unjust enrichment compelled an award equal to *the defendant's gain*" in *Cadwallader* v. *Mason*, 1793 WL 251 (Va. High Ct. of Ch.) (emphasis added)).[9]  This Court should not expand this equitable remedy to allow for the redemption of profits never received, enjoyed, or controlled by the defendant.

---

[9]  The restitutionary remedies cited by *Cavanagh*—constructive trust and accounting—were generally understood to apply to a given wrongdoer's *own* ill-gotten gains.  *See Newby* v. *Enron Corp.*, 188 F. Supp. 2d 684, 702 (S.D. Tex. 2002) ("Restitutionary remedies in equity provided by the chancery courts of England included constructive trust and accounting for profits as mechanisms to accomplish disgorgement or restoration to rectify unjust enrichment."); *id.* at 703 ("The elements of such a constructive trust are: a fiduciary relationship existing between the plaintiff and defendant; which *the defendant* breached; and, as a result, *earned a profit that justice does not permit him to keep*." (citing *Keech* v. *Sandford*, 25 Eng. Rep. 223 (Ch. 1726) (emphasis added)); *id.* at 706 ("The English Chancery Court held in *Docker* v. *Somes*[, 39 Rev. Rep. 317 (Ch. 1834)] that '[w]herever a trustee, or one standing in the relation of a trustee, violates his duty, and deals with the trust estate for his own [behalf], the rule is that he shall account to the *cestui que trust* for all the gain which *he* has made.'" (emphasis added)).

**D.    The Disgorgement Ordered Here Is Not Justified By Any Policy Considerations.**

    **1.    Mr. Contorinis Should Not Be Ordered to Disgorge $7.26 Million Due to Any Purported "Reputational" Benefit.**

The Commission also maintains that disgorgement beyond the amount of Mr. Contorinis's gain can be based on his "reputational benefit." (Opp. at 29-30, 34.) But none of the cases cited by the Commission supports its novel argument. *Dirks* refers to the receipt of a "reputational benefit" as an indicator of whether a particular disclosure breaches the tipper's fiduciary duty for purposes of determining insider liability. 463 U.S. at 663-64. It does not hold that disgorgement orders can be based on reputational benefits. Similarly, *Warde*, 151 F.3d at 49, *Clark*, 915 F.2d at 454, *Texas Gulf Sulfur*, 446 F.2d at 1308, and *Tome*, 639 F. Supp. at 639-40, talk about a tipper's liability for his tippee's gains. In sum, none of these cases discuss—much less endorse—the extraordinary proposition that a defendant can be ordered to repay as disgorgement the "reputational benefit" that may have resulted from the commission of a crime.

The Commission next makes the circular argument that because Mr. Contorinis's profits to be forfeited ($427,875) were based on the Fund's gains, he should be required to forfeit the latter. (Opp. at 29.) Again, the argument makes no sense, and violates the basic equitable purpose of disgorgement, which is to return the defendant to the status quo ante. To the extent Mr. Contorinis personally

17

benefitted from the Fund's gains by receiving a percentage of its profits, his profits

have already been ordered to be forfeited in the criminal case, and both the district

court and the Commission have acknowledged and agreed that "any funds that

[Mr. Contorinis] ultimately forfeits . . . should then be credited toward the

disgorgement ordered against him in this matter." *SEC* v. *Contorinis*, No. 09 Civ.

1043(RJS), 2012 WL 512626, at *5 (S.D.N.Y. Feb. 3, 2012). Accordingly, having

been ordered to forfeit the full amount of his personal profits, including those

dependent on the Fund's profits, there is nothing more to disgorge.

The Commission further contends that Mr. Contorinis could "reap[] a

potentially enormous reputational benefit" through "his future employment and

compensation," and that he should therefore be made to further disgorge. (Opp. at

29-30.) But no such reputational benefit could possibly exist in light of the severe

and stigmatizing criminal and civil penalties that have already been imposed on

Mr. Contorinis. Moreover, after Mr. Contorinis filed his opening brief, the

Commission initiated an administrative proceeding against Mr. Contorinis seeking

permanently to bar him from any association with the securities industry. *In the*

*Matter of Contorinis*, No. 3-15308 (SEC) (Order Instituting Proceedings, released

Apr. 30, 2013). The Commission's suggestion that Mr. Contorinis will enjoy any

18

intangible benefits from his past trading history is, thus, unsupported and disingenuous at best.[10]

### 2. The Disgorgement Ordered Here Is Not the Result of "Uncertainty" that Should Be Construed in Favor of the Commission.

The Commission also attempts to rely on the principle that "where disgorgement calculations cannot be exact, 'any risk of uncertainty . . . should fall on the wrongdoer whose illegal conduct created that uncertainty.'" (Opp. at 23 (quoting *Patel*, 61 F.3d at 140).) But the Commission does not—and cannot—show any uncertainty here. The Commission does not dispute that $427,875 is the amount of profits and incentive bonuses that Mr. Contorinis received. (Opp. at 14, 29.) The dispute over the amount of disgorgement is a legal one, and not the product of any factual uncertainty as to the amount of Mr. Contorinis's gains, and principles applicable to the "uncertainty" of calculations have no bearing on the proper scope of disgorgement in this case.

### 3. Reversal of the Disgorgement Order Will Not "Nullify" the Prohibition Against Insider Trading.

Unable to address the relevant case law regarding the proper limits of disgorgement, the Commission resorts to the claim that unless more extensive disgorgement is allowed, "[t]he prohibition on insider trading would be virtually nullified" and possessors of inside information would be "free to use" that

---

[10]   Mr. Contorinis is opposing the relief sought in the administrative proceeding.

19

information. (Opp. at 17.) The Commission's claims are patently wrong. Insider

trading remains punishable by severe criminal and civil sanctions, including

imprisonment, injunctions, criminal and civil fines, forfeiture, and disgorgement of

the defendant's own profits.[11]

## II.     THE DISTRICT COURT ERRED WHEN IT ORDERED MR. CONTORINIS TO PAY PREJUDGMENT INTEREST IN THE AMOUNT OF $2.485 MILLION.

Even if the disgorgement order were proper, the district court erred by

ordering Mr. Contorinis to pay prejudgment interest on the total amount of $7.26

million under the circumstances here.

### A.     Mr. Contorinis Did Not Waive His Prejudgment Interest Arguments.

The Commission argues that Mr. Contorinis waived his arguments

concerning prejudgment interest in two ways. *First*, the Commission argues that

Mr. Contorinis waived his right to dispute the calculation of prejudgment interest

by not properly disputing those calculations in his response to paragraph 32 of the

Commission's Rule 56.1 Statement of Undisputed Facts. (A-45 ("The

---

[11]   Most of these forms of punishment have already been imposed on Mr. Contorinis. He was ordered to pay a $1 million civil monetary penalty in this case, and in the related criminal case he was sentenced to 72 months' imprisonment and 24 months of supervised release. In addition, and on remand of the forfeiture order in the criminal case—which the parties have agreed should now be $427,875—the district court indicated that it would impose a $2 million dollar fine.

prejudgment interest on Contorinis's ill-gotten gains is $2,485,205.").)  Mr. Contorinis's response, however, was proper and preserved his arguments.

Paragraph 32 stated a conclusion of law to which no response was required.  "[O]nly 'facts,' not legal conclusions, are deemed established by a party's failure to controvert an assertion contained in a counterparty's Rule 56.1 submission."  *Great Am. E & S Ins. Co.* v. *Hartford Fire Ins. Co.*, No. 09 Civ. 10010 (PAC)(GWG), 2012 WL 3186086, at *9 (S.D.N.Y. Aug. 9, 2012).  In any event, Mr. Contorinis's response made clear that he disputed the Commission's statement:  "Disputed.  Mr. Contorinis did not have 'ill-gotten' gains, since he did not commit insider trading, and therefore no prejudgment interest is due."  (A-292.)  This was more than sufficient to convey Mr. Contorinis's disagreement.  It simply cannot be that a party opposing summary judgment is required to set forth multiple denials, in the alternative, to account for each legal and factual issue, and each permutation of that issue.

*Second*, the Commission asserts that Mr. Contorinis did not previously raise any issue concerning the $3 million that the government held as bail.  (Opp. at 43-44).  In fact, however, after ruling on the Commission's motion for summary judgment, the district court ordered the parties to submit letters regarding the amount of prejudgment interest.  (Dkt. No. 157.)  Mr. Contorinis

raised the issue of interest on amounts held as bail in his letter and in a subsequent

telephone conference with the court. (Dkt. No. 162 at 12-13.)

### B.    It Was an Abuse of Discretion to Order Mr. Contorinis to Pay Prejudgment Interest on Profits He Never Received, Controlled, or Enjoyed.

The purpose of prejudgment interest—like disgorgement—is to

deprive a defendant of ill-gotten gains. (Br. at 20.) It is meant to ensure that a

defendant does not enjoy an interest-free loan for the period between the

misconduct and the order of disgorgement. (*Id.* at 20-21.) *See also, e.g.*, *SEC* v.

*Moran*, 944 F. Supp. 286, 295 (S.D.N.Y. 1996) ("Requiring payment of interest

prevents a defendant from obtaining the benefit of what amounts to an interest free

loan procured as a result of illegal activity."). For the same reason that it is

improper to order disgorgement of amounts never acquired or controlled, it is

improper to order prejudgment interest on amounts never acquired or controlled.

(Br. at 21.) *See also, e.g.*, *In re Melridge, Inc. Sec. Litig.*, 837 F. Supp. 1076, 1083

(D. Or. 1993) (declining to award prejudgment interest where the defendant "did

not have the use of the proceeds of the sales of securities").

The cases cited by the Commission do not support an award of

prejudgment interest here. (*See* Opp. at 39-41.) In *Rolf* v. *Blyth, Eastman Dillon*

*& Co., Inc.*, 637 F.2d 77 (2d Cir. 1980), and *Elkind* v. *Liggett & Myers, Inc.*, 472

F. Supp. 123 (S.D.N.Y. 1978), *aff'd in part*, 635 F.2d 156 (2d Cir. 1980), the

award of prejudgment interest was based on compensating a private plaintiff's out-of-pocket loss. *See Rolf*, 637 F.2d at 87 ("Rolf has not had the use of the principal sum in the nine years . . . . In view of the high inflation rates that beset this period, a damage award without prejudgment interest . . . would not give Rolf full compensation."); *Elkind*, 472 F. Supp. at 129-30 ("[P]laintiff is entitled to prejudgment interest in order to fully compensate the class in view of the long delay since this action was commenced and the fact that the class will have to bear the cost of its attorney's fees, discovery costs and the fee of the expert witness."). These cases do not stand for the proposition that a defendant can be ordered to pay prejudgment interest that does not result from sums gained by the defendant or losses attributable to the plaintiff. The Commission has suffered no injury, and therefore cannot collect interest from Mr. Contorinis on funds he did not gain.

Almost all of the other cases cited by the Commission involve prejudgment interest on a tipper's disgorgement of his tippees' gains, (Opp. at 41 (citing *Gowrish*, 2011 WL 2790482, at \*8-9; *Aragon Capital Mgmt.*, 672 F. Supp. 2d at 445; *Drucker*, 528 F. Supp. 2d at 453; *Blackwell*, 477 F. Supp. 2d at 917; *Tome*, 638 F. Supp. at 640; *SEC* v. *Grossman*, No. 87 Civ. 1031 (SWK), 1997 WL 231167, at \*12 (S.D.N.Y. May 6, 1997)), which, as described above, is based on a

23

theory of concerted action not applicable here.[12]  The Commission cites no

persuasive authority for the proposition that it is equitable to order a defendant to

pay prejudgment interest on sums he never received, controlled, or enjoyed.

## C.    It Was an Abuse of Discretion to Order Mr. Contorinis to Pay Prejudgment Interest on Money Held by the Government as Bail.

The inequitable nature of the prejudgment interest ordered was

compounded by the district court's refusal to take into account the $3 million that

Mr. Contorinis turned over to the government for bail in February 2009.  (Br. 21-

22.)  The Commission tries to justify this on the ground that Mr. Contorinis "had

the full benefit" of the $3 million because "it allowed him to remain free."  (Opp.

at 44.)  Even if credited, that argument cannot justify the imposition of

prejudgment interest for the period after October 2010, because the government

retained the $3 million *after Mr. Contorinis was remanded*—a fact the

Commission conveniently ignores.  Not only has the government been holding Mr.

Contorinis's funds since he was remanded, but those funds are not ill-gotten gains.

The argument against prejudgment interest is thus even stronger here than in cases

like *SEC* v. *Aragon Capital Management, LLC*, No. 07 Civ. 919(FM), 2010 WL

517586 (S.D.N.Y. Jan. 29, 2010).  There, the court agreed not to assess

prejudgment interest before the date the funds were distributed to defendants,

---

[12]   For the reasons discussed above, *see* Part I.A and note 4, the other two cases cited by the Commission— *Warde* and *Michel*—are not applicable here either.

because the Commission had failed to show that the defendants otherwise could access the funds from the account in which they were being held. *Id.* at *1.

The Commission attempts to distinguish *SEC* v. *Zafar*, No. 06-CV-1578 (JG)(MDG), 2009 WL 129492 (E.D.N.Y. Jan. 20, 2009), in which prejudgment interest was denied, on the ground that the asset freeze there "deprived the defendant of any use or benefit of the funds." (Opp. at 45.) But like Zafar, once Mr. Contorinis was remanded, he, too, was deprived "of any use or benefit of the funds."

## III. THE DISTRICT COURT ERRED IN ENTERING A PERMANENT INJUNCTION.

The Exchange Act authorizes a follow-the-law injunction only upon a "proper showing" that the defendant "is engaged or is about to engage" in a violation. 15 U.S.C. § 78u(d)(1). This Court's precedents make it clear that this language requires that the Commission establish a reasonable likelihood of future violations. *See SEC* v. *Commonwealth Chem. Sec., Inc.*, 574 F.2d 90, 100 (2d Cir. 1978) (recognizing that the Commission must demonstrate a "realistic likelihood of recurrence"); *SEC* v. *Bausch & Lomb Inc.*, 565 F.2d 8, 18 (2d Cir. 1977) ("It is well settled that the Commission cannot obtain relief without positive proof of a reasonable likelihood that past wrongdoing will recur.").

While the district court discussed the various factors that are meant to inform its conclusion as to whether the Commission met its burden of showing a

likelihood that the defendant would commit future violations, the district court never stated its conclusion. While the Commission speculates as to what that conclusion might have been, the district court failed to make the required factual finding,[13] and the injunction must therefore be vacated.[14]

---

[13] Perhaps recognizing that it did not meet its burden below, the Commission has made numerous attempts to present new evidence to this Court in support of an injunction, including an improper Rule 28(j) letter and a motion for judicial notice that focuses on irrelevant evidence. [D.E. 89 and 98.] It appears that in the Commission's view, the mere fact that Mr. Contorinis has defended these and other related proceedings is "evidence" that he is "about to" violate the securities laws. Indeed, the Commission apparently views any defense, no matter how meritorious, as "evidence" that a defendant is likely to break the law.

[14] Contrary to the Commission's suggestion, (*see* Opp. at 20-23, 47-48), there is nothing improper about Mr. Contorinis describing the facts and circumstances of the conduct that is the basis for the district court's order of disgorgement and the injunction. The collateral estoppel effect of Mr. Contorinis's conviction does not require the resolution of every disputed factual issue in favor of the government, but rather is limited to those facts on which the jury's verdict was "necessarily predicated." *SEC* v. *Reyes*, No. C 06-04435 CRB, 2008 WL 3916247, at *3 (N.D. Cal. Aug. 25, 2008).

# CONCLUSION

For the foregoing reasons, the district court's order of disgorgement (approximately $7.26 million, plus approximately $2.485 million prejudgment interest) and the injunction should be vacated.

Dated:  July 12, 2013
        New York, New York

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

By _____ /s/ Roberto Finzi _____
    Theodore V. Wells, Jr.
       twells@paulweiss.com
    Mark F. Pomerantz
       mpomerantz@paulweiss.com
    Roberto Finzi
       rfinzi@paulweiss.com
    Farrah R. Berse
       fberse@paulweiss.com

1285 Avenue of the Americas
New York, NY  10019-6064
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990

*Attorneys for Defendant-Appellant
Joseph Contorinis*

27

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)(7)(b)

The undersigned counsel for Defendant-Appellant Joseph Contorinis certifies that this reply brief complies with the type-volume limitation set forth in Fed. R. App. P. 32(a)(7)(B)(ii).  This brief contains 6753 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).  In preparing this certificate, I relied on the word count program in Microsoft Word.

By:_____/s/ Roberto Finzi_____
Roberto Finzi

Dated:  July 12, 2013