# 12-1723-cv

## United States Court of Appeals

### *for the*

## Second Circuit

_____

SECURITIES AND EXCHANGE COMMISSION,

*Plaintiff-Appellee*,

v.

JOSEPH CONTORINIS,

*Defendant-Appellant*.

_____

*On Appeal from the United States District Court
for the Southern District of New York*

## PETITION FOR PANEL REHEARING AND REHEARING *EN BANC*

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
Phone: (212) 373-3000
Fax: (212) 757-3990

Theodore V. Wells, Jr.
  twells@paulweiss.com
Mark F. Pomerantz
  mpomerantz@paulweiss.com
Roberto Finzi
  rfinzi@paulweiss.com
Farrah R. Berse
  fberse@paulweiss.com

*Attorneys for Defendant-Appellant Joseph Contorinis*

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................................ ii

RULE 35(b)(1) STATEMENT ............................................................................1

INTRODUCTION ...............................................................................................2

STATEMENT OF THE CASE.............................................................................3

ARGUMENT .......................................................................................................5

I.    The Majority's Decision Is Inconsistent with the Well-Settled Scope and Purpose of Disgorgement..........................................................................5

    A.    The Majority's Decision Conflicts with the *Contorinis* Decision...............................................................................................5

    B.    The Majority's  Decision Conflicts with Supreme Court and Second Circuit Precedent Defining the Permissible Scope of the Equitable Remedy of Disgorgement. ...................................................9

II.   The Majority's Opinion Raises Questions of Exceptional Importance.........13

CONCLUSION .................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Caplin & Drysdale, Chartered* v. *United States*,
491 U.S. 617 (1989)...........................................................................7

*Cent. Bank of Denver, N.A.* v. *First Interstate Bank of Denver, N.A.*,
511 U.S. 164 (1994)...........................................................................7

*Elkind* v. *Liggett & Myers, Inc.*,
635 F.2d 156 (2d Cir. 1980) ..............................................................8

*FTC* v. *Bronson Partners, LLC*,
654 F.3d 359 (2d Cir. 2011) ............................................................11

*FTC* v. *Verity Int'l, Ltd.*,
443 F.3d 48 (2d Cir. 2006) ........................................................*passim*

*Great-W. Life & Annuity Ins. Co.* v. *Knudson*,
534 U.S. 204 (2002)..............................................................1, 11, 12

*Grupo Mexicano de Desarrollo, S.A.* v. *Alliance Bond Fund, Inc.*,
527 U.S. 308 (1999)...........................................................................7

*Hateley* v. *SEC*,
8 F.3d 653 (9th Cir. 1993) ...............................................................12

*Kaley* v. *United States*,
134 S. Ct. 1090 (2014).......................................................................7

*Official Comm. of Unsecured Creditors of WorldCom, Inc.* v. *SEC*,
467 F.3d 73 (2d Cir. 2006) ................................................................7

*Pereira* v. *Farace*,
413 F.3d 330 (2d Cir. 2005) .......................................................1, 12

*SEC* v. *Blatt*,
583 F.2d 1325 (5th Cir. 1978) .........................................................12

*SEC* v. *Blavin*,
760 F.2d 706 (6th Cir. 1985) ...........................................................12

<u>**Page(s)**</u>

*SEC* v. *Commonwealth Chem. Sec., Inc.*,
   574 F.2d 90 (2d Cir. 1978) ...................................................................13

*SEC* v. *ETS Payphones, Inc.*,
   408 F.3d 727 (11th Cir. 2005) ............................................................12

*SEC* v. *First Jersey Sec., Inc.*,
   101 F.3d 1450 (2d Cir. 1996) .............................................................10

*SEC* v. *First Pac. Bancorp*,
   142 F.3d 1186 (9th Cir. 1998) ............................................................12

*SEC* v. *Great Lakes Equities Co.*,
   775 F. Supp. 211 (E.D. Mich. 1991) ...................................................12

*SEC* v. *Lorin*,
   869 F. Supp. 1117 (S.D.N.Y. 1994) ....................................................14

*SEC* v. *Manor Nursing Ctrs., Inc.*,
   458 F.2d 1082 (2d Cir. 1972) .......................................................3, 8, 9

*SEC* v. *Pentagon Capital Mgmt. PLC*,
   725 F.3d 279 (2d Cir. 2013) ...............................................................14

*SEC* v. *Petrofunds, Inc.*,
   420 F. Supp. 958 (S.D.N.Y. 1976) ......................................................13

*SEC* v. *Sierra Brokerage Servs., Inc.*,
   608 F. Supp. 2d 923 (S.D. Ohio 2009) ...............................................12

*SEC* v. *Texas Gulf Sulphur Co.*,
   446 F.2d 1301 (2d Cir. 1971) ...............................................................8

*SEC* v. *Warde*,
   151 F.3d 42 (2d Cir. 1998) ...................................................................8

*SEC* v. *Wyly*,
   860 F. Supp. 2d 275 (S.D.N.Y. 2012) .................................................15

*Smith* v. *SEC*,
   653 F.3d 121 (2d Cir. 2011) ..........................................................14, 15

**Page(s)**

*Tull* v. *United States*,
    481 U.S. 412 (1987) ..................................................................... 13

*United States* v. *Contorinis*,
    692 F.3d 136 (2d Cir. 2012) .................................................. *passim*

*United States* v. *Ursery*,
    518 U.S. 267 (1996) ....................................................................... 6

*Woodell* v. *Int'l Bhd. of Elec. Workers, Local 71*,
    502 U.S. 93 (1991) ........................................................................ 13

## RULES AND STATUTES

15 U.S.C. § 78u(d)(5) ........................................................................ 11

Fed. R. App. P. 35 ......................................................................... 1, 2

Fed. R. App. P. 40 ............................................................................ 1

## OTHER AUTHORITIES

John K. Robinson, *A Reconsideration of the Disgorgement Remedy in
    Tipper-Tippee Insider Trading Cases*, 62 Geo. Wash. L. Rev. 432
    (1994) ............................................................................................. 9

Russell G. Ryan, *The Equity Façade of SEC Disgorgement*, 4 Harv.
    Bus. L. Rev. Online 1 (2013) , http://www.hblr.org/?p=3528 ......................... 11

Transcript in *SEC* v. *Tourre*,
    10 Civ. 3229 (KBF) (S.D.N.Y. Feb. 20, 2014) ..................................... 9

# RULE 35(b)(1) STATEMENT

Defendant-Appellant Joseph Contorinis respectfully petitions this Court for panel rehearing or, in the alternative, rehearing *en banc* pursuant to Federal Rules of Appellate Procedure 35 and 40. Rehearing is appropriate because the Majority decision—affirming an order of disgorgement of profits Mr. Contorinis never acquired, enjoyed, or controlled—conflicts with decisions of the Supreme Court and this Court and raises issues of exceptional importance.

The Majority misconstrued the relevance and applicability of a decision in the related criminal case, *United States* v. *Contorinis*, 692 F.3d 136 (2d Cir. 2012) ("*Contorinis*"), "involving the same defendant, the same investment fund, and the same proceeds" (Dissent at 4), in which the Court held—in an opinion joined by the dissenting Judge in this case—that Mr. Contorinis could not be ordered to forfeit profits that "were never possessed or controlled by himself or others acting in concert with him." 692 F.3d at 148.

In affirming an order that Mr. Contorinis disgorge an amount nearly 23 times (including interest) the amount he ever acquired, enjoyed, or controlled, the Panel misconstrued precedent regarding the permissible scope of the equitable remedy of disgorgement. *See, e.g., Great-W. Life & Annuity Ins. Co.* v. *Knudson*, 534 U.S. 204 (2002); *FTC* v. *Verity Int'l, Ltd.*, 443 F.3d 48 (2d Cir. 2006); *Pereira* v. *Farace*, 413 F.3d 330 (2d Cir. 2005). Rehearing is necessary to secure and

maintain uniformity of the Court's decisions. FED. R. APP. P. 35(b)(1)(A).

This proceeding also involves issues of exceptional importance. FED. R. APP. P. 35(b)(1)(B). The Panel's decision to expand the scope of disgorgement implicates fundamental rights and protections required by the Constitution, federal statutes, and common law.

## INTRODUCTION

On August 17, 2012, a unanimous panel of this Court held that Mr. Contorinis could not be ordered to forfeit profits (and avoided losses) that "were never possessed or controlled by himself or others acting in concert with him." *Contorinis*, 692 F.3d at 148. Eighteen months later, a divided panel of this Court came to the opposite conclusion in this parallel civil case that, while focused on disgorgement rather than forfeiture, "involv[es] the same defendant, the same investment fund, and the same proceeds." (Dissent at 4.) The Majority held that a court's authority to order disgorgement from the wrongdoer extends to "property causally related to the wrongdoing" (Op. at 18 (internal quotation marks omitted))—even when that property "accrue[d] to innocent third parties" (*id*. at 16), and was "never possessed" by the defendant (*id.* at 22). The Majority's attempts notwithstanding, the two cases cannot be reconciled.

Not only is the Majority's holding inconsistent with *Contorinis*, it also conflicts with the fundamental purpose of the equitable remedy of disgorgement as

defined by the Supreme Court, and by this and other Circuits. By allowing for the "disgorgement" of profits never received, enjoyed, or controlled by Mr. Contorinis, the Panel disregarded long-standing precedent and impermissibly turned an equitable remedy into a penalty. Indeed, it has long been the rule that a disgorgement award is an improper penalty—and not purely equitable relief— when it exceeds the defendant's *own* ill-gotten gains. *Verity*, 443 F.3d at 66–69; *SEC* v. *Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1104–05 (2d Cir. 1972). The Majority's decision is fundamentally inconsistent with this principle, and panel or *en banc* rehearing is necessary to secure uniformity of the Court's decisions.

Rehearing *en banc* is also warranted because the Majority's decision raises questions of exceptional importance. Under the Majority's new reading of the permissible scope of disgorgement, the Commission now has the ability to ask (and courts have the ability to order) that an equitable remedy be transformed into a penalty without the corresponding and necessary protections guaranteed by the Constitution, federal statutes, and common law.

## STATEMENT OF THE CASE

Following a trial in the United States District Court for the Southern District of New York in 2010, a jury convicted Mr. Contorinis of insider trading for trades he made, in one stock, as the co-portfolio manager of the Jefferies Paragon Fund (the "Fund"). (Op. at 4–5.) Mr. Contorinis personally profited

3

$427,875 as a result of these trades.  (*Id*. at 6.)  At sentencing, Mr. Contorinis was ordered imprisoned for six years and, over objection, was directed to forfeit not just his own personal profits, but both profits made and losses avoided by the Fund for which he traded, in the amount of $12,650,438.  (*Id*. at 5.)  On appeal, this Court affirmed the conviction but vacated the order of forfeiture, holding that Mr. Contorinis could not be required to forfeit the *Fund's* profits (or its avoided losses) because they "were never possessed or controlled by himself or others acting in concert with him."  *United States* v. *Contorinis*, 692 F.3d 136, 148 (2d Cir. 2012).  On remand, the parties stipulated that Mr. Contorinis would forfeit his personal profits of $427,875.  (Op. at 6.)

The Commission brought this parallel civil action against Mr. Contorinis based on the same conduct alleged in the criminal case.  (*Id.*)  Following the verdict in the criminal case, the district court granted summary judgment for the Commission, enjoining Mr. Contorinis from future violations of the securities laws and ordering him to disgorge $7,260,604, plus prejudgment interest of $2,485,205, and to pay a civil monetary penalty of $1,000,000.  (*Id*. at 7.)  Mr. Contorinis appealed from the order of disgorgement and interest and the injunction (but not the civil monetary penalty).[1]  (*Id*. at 7.)

---

[1]   Mr. Contorinis is not seeking panel rehearing, or rehearing *en banc*, with respect to the Panel's affirmance of the injunction.

A divided panel of this Court affirmed the district court's order. While acknowledging that Mr. Contorinis could not be required to *forfeit* funds he never received, enjoyed, or controlled, the Majority held that Mr. Contorinis could be required to *disgorge* those same proceeds. (*Id*. at 21–24.) In a decision that conflicts with *Contorinis*, and also with Supreme Court and Second Circuit law defining the permissible scope of disgorgement, the Majority held that a district court's authority to order disgorgement from the wrongdoer extends to "property causally related to the wrongdoing" (*id*. at 18 (internal quotation marks omitted)), even those that "accrue to innocent third parties" (*id*. at 16) and that the defendant "never possessed" (*id.* at 22). In dissent, Judge Chin—who joined the *Contorinis* opinion—argued that the Majority decision was "inconsistent with both the nature and purpose of disgorgement as well as [this Court's] decision in the related criminal case." (Dissent at 1.)

## ARGUMENT

## I.    The Majority's Decision Is Inconsistent with the Well-Settled Scope and Purpose of Disgorgement.

### A.    The Majority's Decision Conflicts with the *Contorinis* Decision.

Eighteen months ago, a unanimous panel of this Court held that Mr. Contorinis could not be required to forfeit the same profits that he was ordered to disgorge here. The *Contorinis* panel held that Mr. Contorinis could not be ordered to forfeit profits that "were never possessed or controlled by [Mr. Contorinis] or

others acting in concert with him," and which, instead, went "directly to an innocent third party" over which Mr. Contorinis "lack[ed] control." 692 F.3d at 146–47. "Now, in this civil proceeding involving the same defendant, the same investment fund, and the same proceeds, the majority reache[d] the opposite result . . . ." (Dissent at 4.) In doing so, the Majority relied upon an extension of tipper-tippee precedents that was explicitly rejected in *Contorinis*. (*Id*. at 5–7.) This Court should grant rehearing in order to reconcile these inconsistent decisions.

"Both forfeiture and disgorgement seek to force a defendant to give up—that is, to forfeit or to disgorge—what he has wrongfully gained." (*Id*. at 4.) "[C]onceptually [forfeiture and disgorgement] are largely the same" (*id*.), and frequently are used interchangeably. *See, e.g.*, *United States* v. *Ursery*, 518 U.S. 267, 284 (1996) (forfeiture is "designed primarily to confiscate property used in violation of the law, and to require *disgorgement* of the fruits of illegal conduct" (emphasis added)); *Contorinis*, 692 F.3d at 146 ("Criminal forfeiture focuses on the *disgorgement* by a defendant of his 'ill-gotten gains.'" (quoting *United States* v. *Kalish*, 626 F.3d 165, 170 (2d Cir. 2010) (emphasis added))).

The Majority identified three relevant differences between criminal forfeiture and disgorgement. (Op. at 21–24.) None justifies the distinction for which they are offered. Rather, and if anything, each requires that disgorgement be interpreted more *narrowly*, not more *broadly*, than forfeiture.

6

*First*, forfeiture is punitive, while disgorgement—a purely remedial remedy—is not. (Op. at 8, 21.) This distinction has been understood to be an important *limit* on disgorgement, in that forfeiture could include a punitive component where disgorgement could not.[2] *See Kaley* v. *United States*, 134 S. Ct. 1090, 1094 (2014); *see also Caplin & Drysdale, Chartered* v. *United States*, 491 U.S. 617, 634 (1989) ("Forfeiture provisions are powerful weapons in the war on crime . . . ."). It is odd—and counterintuitive—to allow a concept (disgorgement) aimed only at returning a defendant to the status quo to reach further than a concept (forfeiture) that is expressly designed to punish.

*Second*, forfeiture—unlike disgorgement—is a "creature of statute." (Op. at 23.) The judicially-implied remedy of disgorgement should not be extended "beyond the bounds delineated for comparable express" remedies, *Cent. Bank of Denver, N.A.* v. *First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 180 (1994), particularly given the "traditionally cautious approach to equitable powers," *Grupo Mexicano de Desarrollo, S.A.* v. *Alliance Bond Fund, Inc.*, 527 U.S. 308, 329 (1999).

*Third*, disgorgement—unlike forfeiture—may be imposed upon innocent third parties. (Op. at 21, 22.) This is because the *possession* of ill-gotten

---

[2]   *See Official Comm. of Unsecured Creditors of WorldCom, Inc.* v. *SEC*, 467 F.3d 73, 81 (2d Cir. 2006) ("Disgorgement merely requires the return of wrongfully obtained profits; it does not result in *any actual economic penalty* . . . ." (quoting H.R. Rep No. 101-616 (1990)) (emphasis added)).

gains, *not culpability*, is the touchstone of disgorgement.  The alternative remedy of disgorgement *from the Fund*—which both the Majority and Dissent agree would have been available here (*id*. at 17 n.4; Dissent at 7 n.1)—further counsels against the expansion of disgorgement that results from the Majority's opinion.

Most importantly, the Majority's argument that cases ordering a tipper to disgorge his tippee's profits support interpreting disgorgement more broadly than forfeiture—thus permitting a decision in this case contrary to *Contorinis*—is unpersuasive.  (Op. at 10–13 (citing *SEC* v. *Warde*, 151 F.3d 42 (2d Cir. 1998); *Elkind* v. *Liggett & Myers, Inc.*, 635 F.2d 156 (2d Cir. 1980); *SEC* v. *Texas Gulf Sulphur Co.*, 446 F.2d 1301 (2d Cir. 1971)).)[3]  As an initial matter, "[w]e do not have a tipper-tippee relationship here.  Contorinis was not a tipper."  (Dissent at 7.)  And, the rationale of the tipper-tippee cases "'does not support an extension to a situation where the proceeds go directly to an innocent third party and are never possessed by the defendant.'"  (*Id*. at 5 (quoting *Contorinis*, 692 F.3d at 147).)  But, even if the Majority were correct that the tipper-tippee cases cannot be distinguished from Mr. Contorinis's situation (Op. at 11 n.2), then this questionable line of precedent is ripe for reconsideration by an *en banc* court.  *See*

---

[3]   None of these cases required a defendant to disgorge third-party profits to the Commission.  *Texas Gulf Sulphur* involved "compensation to the issuing corporation for harm done to it by its officers and employees," *Manor Nursing Ctrs.*, 458 F.2d at 1104; *Elkind* calculated damages in a private lawsuit, 635 F.2d at 158; and *Warde* did not involve true third parties because the defendant had complete control over the accounts at issue, 151 F.3d at 49.

John K. Robinson, *A Reconsideration of the Disgorgement Remedy in Tipper-Tippee Insider Trading Cases*, 62 GEO. WASH. L. REV. 432 (1994) (arguing that the tipper-tippee rule is no longer equitable now that Congress has authorized civil monetary penalties for insider trading and now that recovery against relief defendants is clearly available).

There is no good reason why the logic of *Contorinis* should not apply here. *En banc* review is necessary to secure uniformity of the Court's decisions.

**B.    The Majority's  Decision Conflicts with Supreme Court and Second Circuit Precedent Defining the Permissible Scope of the Equitable Remedy of Disgorgement.**

Two days after the Panel issued its opinions in this case, an Assistant Chief Litigation Counsel at the Commission described disgorgement to a district judge in this Circuit as follows:

> Disgorgement is merely giving back ill-gotten gains so that you would be in the exact same position you would have been in if you had not engaged in the fraudulent conduct.

Tr. in *SEC* v. *Tourre*, 10 Civ. 3229 (KBF), at 22:16–18 (S.D.N.Y. Feb. 20, 2014). That black-letter description of disgorgement is the law in this Circuit under this Court's decision in *FTC* v. *Verity International, Ltd.*, 443 F.3d 48 (2d Cir. 2006)—a decision which Mr. Contorinis cited in his opening brief and which was not cited by either the Commission or the Majority.  Other long-standing precedent is in accord.  *See Manor Nursing Ctrs.,* 458 F.2d at 1104−05 (reversing portion of

disgorgement order that extended to incomes earned on ill-gotten gains because it was "in fact a penalty assessment").[4]

In *Verity*, this Court held that liability for ill-gotten gains "must be limited to so-called equitable restitution," which in turn is limited to assets currently or formerly "*in the defendant's possession*." *Verity*, 443 F.3d at 66, 67 n.10 (emphasis added). Because this remedy, "to the extent it exists, derives from the district court's equitable jurisdiction, it follows that the district court may award *only* equitable restitution." *Id*. at 67 (emphasis added). In *Verity*, the defendant received only a fraction of the ill-gotten gains because the deceptive trade practice at issue involved billing through third-party telephone companies. *Id*. at 67–68. This Court remanded for consideration of "how much of this sum was *in fact received* by the defendants-appellants," holding that only that amount could "be the basis for the disgorgement remedy." *Id*. at 68 (emphasis added).[5]

---

[4]  The Majority also relied on *SEC* v. *First Jersey Securities, Inc.*, 101 F.3d 1450 (2d Cir. 1996), a case involving a "control person" made jointly and severally liable by statute. (Op. at 9, 17, 20.) But even for a control person, this Court noted that the "contention that [the control person] should be required to disgorge only amounts that he withdrew from the Firm might be more persuasive if he had owned less than all of First Jersey's stock." *First Jersey*, 101 F.3d at 1476. Here, Mr. Contorinis, unlike the control person in *First Jersey*, could not "request a check in any amount at any time" from the Fund; thus, unlike in *First Jersey*, there is no argument that the Fund's profits were properly regarded as his "personal wealth." *Id*.

[5]  *Verity* also rejected the argument, accepted by the Majority here, that the "presumption against the wrongdoer" could be invoked with respect to funds

The Majority's decision cannot be reconciled with this Circuit's holding in *Verity*.

What is inequitable for the FTC cannot be equitable for the Commission.[6]

In fact, *Verity* was a straightforward application of the Supreme

Court's decision in *Great-West Life & Annuity Insurance Co.* v. *Knudson*, 534 U.S.

204 (2002). In *Great-West*, Justice Scalia explained that, in contrast to "restitution

at law," "a plaintiff could seek restitution in equity . . . where money or property

identified as belonging in good conscience to the plaintiff could clearly be traced to

particular funds or property in the defendant's possession." *Id.* at 213. Thus, the

Court explained, "for restitution to lie in equity, the action generally must seek not

to impose personal liability on the defendant, but to restore to the plaintiff

particular funds or property in the defendant's possession." *Id.* at 214.[7]

---

never possessed by the defendant. Compare *Verity*, 443 F.3d at 68–70, *with* Op. at 20.

[6] This Court reaffirmed *Verity* in *FTC* v. *Bronson Partners, LLC*, 654 F.3d 359, 369 (2d Cir. 2011) ("As our decision in *Verity* made clear, funds . . . never received by a defendant are not unjust gains."); *id.* at 374 ("The only limitation that *Verity* placed on the district court's remedial authority was the requirement that any monetary award be limited to funds that actually were paid to the defendants, as opposed to money that was paid by the consumer but withheld by a middleman.").

[7] Notably, the Exchange Act's authorization for "equitable relief" in judicial enforcement actions, 15 U.S.C. § 78u(d)(5), was enacted *after Great-West*. *See* Russell G. Ryan, *The Equity Façade of SEC Disgorgement*, 4 HARV. BUS. L. REV. ONLINE 1, 4 & n.22, 9 n.57 (2013) , http://www.hblr.org/?p=3528. Congress thus codified *Great-West*'s definition of equitable relief. *See Great-West*, 534 U.S. at 217 ("Congress felt comfortable referring to equitable relief

Indeed, as this Court explained in *Pereira* v. *Farace*, the Court is "compelled to read *Great-West* as broadly as it is written," and a footnote in *Great-West* provides the "single exception to its rule that a defendant must possess the funds at issue for the remedy of equitable restitution to lie against him." 413 F.3d 330, 340 (2d Cir. 2005).[8] Here, as in *Pereira*, because Mr. Contorinis "never possessed the funds in question," he "w[as] not unjustly enriched," and "the remedy sought against [him] cannot be considered equitable." *Id.* at 339.[9]

---

in this statute—as it has in many others—precisely because the basic contours of the term are well known." (footnote omitted)).

[8] "There is a limited exception for an accounting for profits, a form of equitable restitution . . . . If, for example, a plaintiff is entitled to a constructive trust on particular property *held by the defendant*, he may also recover profits produced by the defendant's use of that property, even if he cannot identify a particular res containing the profits sought to be recovered." *Great-West*, 534 U.S. at 214 n.2 (emphasis added). Because the Fund's profits were never held by Mr. Contorinis, this exception does not apply here.

[9] Other circuits, too, have rejected the notion that a defendant can be required to disgorge third-party profits caused by his violation. *See Hateley* v. *SEC*, 8 F.3d 653, 654–56 (9th Cir. 1993) (holding that a brokerage firm (and its control person) only could be required to disgorge 10% of the commissions generated by a broker they knew to be unregistered because they paid that broker the other 90% and that an order holding otherwise was "unreasonable and excessive"); *SEC* v. *Blatt*, 583 F.2d 1325, 1335–36 (5th Cir. 1978) (holding that defendants Blatt and Sandowski could not be required to disgorge the profits of co-defendant Pullman, but only the "fee realized by each defendant for his assistance in executing the fraud," that a "court's power to order disgorgement extends only to the amount with interest by which the defendant profited from his wrongdoing," and that "[a]ny further sum would constitute a penalty assessment"); *SEC* v. *ETS Payphones, Inc.*, 408 F.3d 727, 735 (11th Cir. 2005) (quoting *Blatt*). The out-of-circuit cases the Majority claims support its view (*see* Op. at 18 n.5), involve either (i) control persons, *SEC* v. *Sierra Brokerage*

12

## II.    The Majority's Opinion Raises Questions of Exceptional Importance.

The Majority's opinion also raises questions of exceptional importance.  Specifically, the opinion, which allows courts to impose de facto penalties described as equitable remedies, implicates rights and protections guaranteed by the Constitution, statutes, and common law.  By way of example:

*First*, the Majority's opinion implicates a defendant's Constitutional right to a trial by jury.  Courts in this Circuit have relied on the equitable nature of disgorgement in holding that a defendant is not entitled to a jury trial pursuant to the Seventh Amendment for purely equitable claims.  *See SEC* v. *Commonwealth Chem. Sec., Inc.*, 574 F.2d 90, 96 (2d Cir. 1978); *SEC* v. *Petrofunds, Inc.*, 420 F. Supp. 958, 960 (S.D.N.Y. 1976).  But where a defendant can be held to disgorge profits he never received, as is the case here, the judgment can no longer be considered an equitable "disgorgement" but rather constitutes (or at least clearly implicates notions of) a penalty, which requires a trial by jury.  *See Tull* v. *United States*, 481 U.S. 412, 424–25 (1987).[10]

---

*Servs., Inc.*, 608 F. Supp. 2d 923 (S.D. Ohio 2009); (ii) "alter-egos," *SEC* v. *Blavin*, 760 F.2d 706, 711 (6th Cir. 1985); *SEC* v. *Great Lakes Equities Co.*, 775 F. Supp. 211, 212 (E.D. Mich. 1991); or (iii) concerted action giving rise to joint and several liability, *SEC* v. *First Pac. Bancorp*, 142 F.3d 1186 (9th Cir. 1998).  Mr. Contorinis was not a control person; nor was the Fund his alter ego.  And, as this Court held in *Contorinis*, Mr. Contorinis could not be held jointly and severally liable with the Fund as a concerted actor.  (*See* Dissent at 5–7.)

[10]  The Supreme Court has explained that it is the nature of the remedy sought that determines whether it is equitable or legal and, consequently, whether a right to

*Second*, the Majority's decision dilutes (and in some cases eviscerates) the concept of repose intended by the applicable statute of limitations. Courts in this Circuit have held that, while penalties are subject to the congressionally-prescribed statutes of limitations, disgorgement is not because it "merely returns the wrongdoer to the status quo before any wrongdoing occurred." *SEC* v. *Lorin*, 869 F. Supp. 1117, 1122 (S.D.N.Y. 1994); *see also SEC* v. *Pentagon Capital Mgmt. PLC*, 725 F.3d 279, 288 n.8 (2d Cir. 2013) (allowing disgorgement even where civil penalties were barred by statute of limitations). Under the expanded disgorgement remedy endorsed by the Majority's decision, the Commission can avoid any limitations period that would apply to an action seeking to impose a de facto penalty simply by characterizing claims that in substance seek penalties as claims for disgorgement.

*Third*, the Majority's decision dramatically affects (and increases) the power of the Commission to seek coercive asset freezes. Once a district court's equity jurisdiction properly has been invoked, "the court has power to order all equitable relief necessary under the circumstances, including the impoundment of assets." *Smith* v. *SEC*, 653 F.3d 121, 127 (2d Cir. 2011) (citations and internal quotation marks omitted). As this Circuit has explained, "[t]he purpose of such an

---

trial by jury exists. *Woodell* v. *Int'l Bhd. of Elec. Workers, Local 71*, 502 U.S. 93, 97 (1991). Where the relief sought plainly is deterrent or punitive, as here, the action is legal in nature and the Seventh Amendment preserves the right to a trial by jury. *See Tull*, 481 U.S. at 424–25.

14

asset freeze is to ensure that any funds that may become due can be collected." *Id.*
(internal quotation marks omitted).  Because the Majority's  decision permits
disgorgement of assets in excess of funds earned by a defendant, the Commission
may be able to obtain a freeze beyond any amount needed to preserve the status
quo.  Those freezes could have an unnecessary coercive effect on defendants.

*Fourth*, the Panel's decision is inconsistent with the law governing the
survivability of claims brought by the Government.  At least one court in this
Circuit has held that claims for disgorgement are survivable beyond death because
they are remedial in nature.  In *SEC* v. *Wyly*, the court permitted the Commission
to substitute the executor of the defendant's estate as a party defendant on a
disgorgement claim because it held that actions for disgorgement are "remedial."
860 F. Supp. 2d 275, 276, 283 (S.D.N.Y. 2012).[11]  Knowing that only
disgorgement survives a defendant's death, the Commission could, under the
Panel's decision, simply re-characterize a punitive remedy as "disgorgement" and
pursue damages from a deceased's estate.

## CONCLUSION

For the foregoing reasons, panel rehearing or, in the alternative,
rehearing *en banc* should be granted.

---

[11]  The original action sought civil penalties, injunctive relief, and disgorgement.
Because the defendant died, the Commission abandoned its requests for
injunctive relief and penalties "because it recognize[d] that such causes of
action abate upon the death of a defendant."  *Wyly*, 860 F. Supp. 2d at 275–76.

Dated:  April 4, 2014
        New York, New York

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

By _____/s/ Roberto Finzi_____
     Theodore V. Wells, Jr.
        twells@paulweiss.com
     Mark F. Pomerantz
        mpomerantz@paulweiss.com
     Roberto Finzi
        rfinzi@paulweiss.com
     Farrah R. Berse
        fberse@paulweiss.com

1285 Avenue of the Americas
New York, NY  10019-6064
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990

*Attorneys for Defendant-Appellant
Joseph Contorinis*

## CERTIFICATE OF COMPLIANCE WITH
## FEDERAL RULES OF APPELLATE PROCEDURE 32(A) AND 35(B)(2)

Certificate of Compliance with Type-Volume Limitations,
Typeface Requirements, and Type Style Requirements

1.    This petition complies with the type-volume limitation of Fed. R. App. P. 35(b)(2) because this petition does not exceed 15 pages, excluding material not counted under Fed. R. App. P. 32.

2.    This petition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6), because this petition has been prepared in a proportionally spaced typeface using Microsoft Office Word Times New Roman 14-point font.


By:_____/s/ Roberto Finzi_____
                   Roberto Finzi


Dated:  April 4, 2014

12-1723-cv
SEC v. Contorinis

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

————————

August Term, 2013

(Argued: October 7, 2013    Decided: February 18, 2014)

Docket No. 12-1723-cv

————————

SECURITIES AND EXCHANGE COMMISSION,

*Plaintiff-Appellee,*

— v. —

JOSEPH CONTORINIS,

*Defendant-Appellant.*[*]

————————

B e f o r e:

LYNCH, CHIN, and CARNEY, *Circuit Judges*.

————————

---

[*] The Clerk of Court is respectfully directed to amend the official caption in this case to conform with the caption above.

Defendant appeals from a judgment of the United States District Court for the Southern District of New York (Richard J. Sullivan, *Judge*), ordering him to disgorge all profits generated by insider trading, enjoining him from future violations of the securities laws, and ordering him to pay prejudgment interest on the disgorgement amount.  Defendant was convicted at a criminal trial of securities fraud and conspiracy to commit securities fraud, based on his use of inside information to trade on behalf of an investment fund of which he was Managing Director.  Subsequently, in this civil enforcement action, the district court granted the SEC's motion for summary judgment and, among other forms of relief, ordered defendant to disgorge all profits made by the insider trades, including those profits that accrued to the fund rather than to defendant personally.  Because a tipper can be required to disgorge all gains obtained by his tippees through illegal insider trading even without direct economic benefit to the tipper, and because defendant gave the fund the benefit of his inside information just as does a tipper, we hold the district court did not abuse its discretion by ordering the defendant to disgorge all profits.  We similarly identify no abuse of discretion in the district court's orders directing payment of prejudgment interest and issuing an injunction.

2

AFFIRMED.

Judge Chin dissents in a separate opinion.

———————————

ALLAN A. CAPUTE (Anne K. Small, Michael A. Conley, Jacob H. Stillman, *on the brief*), Securities and Exchange Commission, Washington, D.C., *for Plaintiff-Appellee.*

ROBERTO FINZI (Theodore V. Wells, Jr., Mark F. Pomerantz, Farrah R. Berse, *on the brief*), Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, NY, *for Defendant-Appellant.*

———————————

GERARD E. LYNCH, *Circuit Judge*:

Joseph Contorinis appeals from a judgment of the United States District Court for the Southern District of New York (Richard J. Sullivan, *Judge*) ordering him to disgorge $7,260,604 in profits from illegal insider trading, enjoining him from further violating the securities laws, and ordering him to pay prejudgment interest on the entire disgorgement amount. The primary issue presented is whether an insider trader who trades on behalf of another person or entity using funds he does not own, and thus produces illegal profits that he does not personally realize, can nevertheless be required to disgorge the full amount of illicit profit he generates from his illegal and fraudulent actions. Because our

3

cases have established that tippers can be required to disgorge profits realized by their tippees' illegal insider trading, and this case is distinguishable only insofar as Contorinis himself executed the fraudulent trades rather than leave that task to a tippee, we conclude that the district court was empowered to enter the disgorgement order, and did not abuse its discretion in doing so.  Additionally, we find no abuse of discretion in the district court's imposition of an injunction on Contorinis or in its order that Contorinis pay prejudgment interest on the disgorgement amount.  We therefore affirm the district court's decision.

## BACKGROUND

Defendant-appellant Joseph Contorinis, a Managing Director at Jeffries & Company, Inc. ("Jeffries"), executed several illegal insider trades involving the stock of the supermarket chain Albertson's, Inc. ("Albertson's"), using material nonpublic information received from Nicos Stephanou, an employee of UBS Investment Bank ("UBS").  The offense had its origins in September 2005, when Stephanou informed Contorinis that UBS would be advising on a major financial acquisition involving Albertson's.  As a UBS employee involved in the transaction, Stephanou was privy to confidential material information regarding the acquisition, and Contorinis asked Stephanou to keep him apprised of developments.

4

In January 2006, as negotiations involving the acquisition of Albertson's unfolded, Stephanou on several occasions disclosed material inside information regarding the acquisition to Contorinis before the information became public. Relying on that information, Contorinis made several opportune trades in Albertson's stock. Contorinis did not execute these trades with his personal assets, but rather did so on behalf of the Jeffries Paragon Fund (the "Paragon Fund"), of which Contorinis was a co-manager and over which he had investment control. As a result of these insider trades the Paragon Fund realized profits of $7,304,738, and avoided losses of $5,345,700.

In February 2009, Contorinis was indicted on one count of conspiracy to commit securities fraud and nine counts of securities fraud. A jury found him guilty of the conspiracy and of seven counts of securities fraud, and on October 6, 2010, he was sentenced to six years of imprisonment and ordered to pay $12,650,438 (the combined value of the Paragon Fund's realized profits and avoided losses) in criminal forfeiture penalties.

On appeal, this Court affirmed Contorinis's conviction but vacated the forfeiture order, remanding to the district court to redetermine the proper amount. United States v. Contorinis, 692 F.3d 136, 148 (2d Cir. 2012). We

5

observed that neither the language of the criminal forfeiture statute nor Circuit case law supported the proposition that a defendant must forfeit proceeds that "go directly to an innocent third party and are never possessed by the defendant."  Id. at 147.  Rather, criminal forfeiture penalties are "usually based on the defendant's actual gain."  Id. at 146.  The district court's initial forfeiture calculation reflected the total benefit to the Paragon Fund, not the gains accruing to Contorinis himself.  On remand, the district court found that Contorinis's personal profit, in the form of linked compensation from the trades, amounted to $427,875, and ordered forfeiture of that amount.

Following the filing of the criminal indictment, the Securities and Exchange Commission ("SEC") brought this civil action against Contorinis in the United States District Court for the Southern District of New York, seeking disgorgement of $7,260,604 in unlawful profits obtained by the Paragon Fund (equivalent to the total profit from insider trading less trading commission costs), as well as additional civil monetary penalties and an injunction against future securities law violations.  After Contorinis was convicted at his criminal trial, the SEC moved for summary judgment, and Contorinis, without admitting to the underlying offense, acknowledged that the jury verdict had a preclusive effect

requiring a finding of civil liability.  On February 3, 2012, the district court granted the SEC's summary judgment motion against Contorinis and granted relief in the forms requested by the SEC, permanently enjoining Contorinis from violating the securities laws in the future, ordering Contorinis to disgorge $7,260,604 (less any amount paid pursuant to the criminal forfeiture), and imposing a civil penalty of $1,000,000.  In a superseding judgment of February 29, 2012, the district court reaffirmed those penalties, and furthermore ordered Contorinis to pay $2,485,205 in prejudgment interest on the disgorgement amount.[1]

Contorinis timely brought this appeal, challenging the judgment insofar as it required him to disgorge the entire amount obtained by the Paragon Fund through insider trading and to pay prejudgment interest on the disgorgement amount, and permanently enjoined him from violating the securities laws.

---

[1] On September 24, 2013, the SEC informed the Court that the parties had agreed to adjust the prejudgment interest amount to reflect the fact that, after the sentence was imposed, Contorinis had posted $3,000,000 as bail, of which the government, and not Contorinis, had the use between October 7, 2010 and March 29, 2011.  That adjustment reduces the prejudgment interest award from $2,485,205 to $2,417,940.  The agreement did not resolve any of the other issues in dispute between the parties, including Contorinis's contention that he should not be required to pay prejudgment interest at all.  September 24, 2013 Letter, SEC v. Contorinis, No. 12-1723, ECF No. 122.

## DISCUSSION

I.   <u>Disgorgement of Profit Accruing to the Paragon Fund</u>

Disgorgement serves to remedy securities law violations by depriving violators of the fruits of their illegal conduct.  <u>See</u> <u>SEC v. Fischbach Corp.</u>, 133 F.3d 170, 175 (2d Cir. 1997); <u>see also</u> <u>SEC v. Tome</u>, 833 F.2d 1086, 1096 (2d Cir. 1987) ("The paramount purpose of enforcing the prohibition against insider trading by ordering disgorgement is to make sure that wrongdoers will not profit from their wrongdoing.").  Disgorgement is an equitable remedy, imposed to "forc[e] a defendant to give up the amount by which he was unjustly enriched." <u>FTC v. Bronson Partners</u>, 654 F.3d 359, 372 (2d Cir. 2011), quoting <u>SEC v. Commonwealth Chem. Sec., Inc.</u>, 574 F.2d 90, 102 (2d Cir. 1978).  By forcing wrongdoers to give back the fruits of their illegal conduct, disgorgement also "has the effect of deterring subsequent fraud."  <u>SEC v. Cavanagh</u>, 445 F.3d 105, 117 (2d Cir. 2006) ("<u>Cavanagh II</u>").  Because disgorgement does not serve a punitive function, the disgorgement amount may not exceed the amount obtained through the wrongdoing.  <u>Id.</u> at 116 n.25.  At the same time, however, as it operates to make the illicit action unprofitable for the wrongdoer, disgorgement need not serve to compensate the victims of the wrongdoing.

8

Bronson, 654 F.3d at 374.  Because disgorgement is not compensatory, it "forces a

defendant to account for all profits reaped through his securities law violations

and to transfer all such money to the court, even if it exceeds actual damages to

the victim."  Cavanagh II, 445 F.3d at 117.  Because disgorgement's underlying

purpose is to make lawbreaking unprofitable for the law-breaker, it satisfies its

design when the lawbreaker returns the fruits of his misdeeds, regardless of any

other ends it may or may not accomplish.

"The district court has broad discretion not only in determining whether or

not to order disgorgement but also in calculating the amount to be disgorged."

SEC v. First Jersey Sec., Inc., 101 F.3d 1450, 1474-75 (2d Cir. 1996).  Accordingly,

we review a disgorgement order for abuse of that discretion.  SEC v. Posner, 16

F.3d 520, 522 (2d Cir. 1994).

Contorinis argues that because he never personally controlled the profits

that accrued to the Paragon Fund – although he could make investment

decisions, he did not control disbursement of the proceeds – ordering him to

disgorge the entire amount gained through his insider trading is a misapplication

of the disgorgement principle.  The argument identifies an ambiguity in the

concept of disgorgement.  Disgorgement instantiates the equitable principle that

9

wrongdoers should not benefit from their misdeeds, and thus should relinquish any profits obtained from them.  On the one hand,  Contorinis argues that because he illegally traded not for his own account with his own funds, but rather on behalf of an investment fund that he managed and whose assets belonged to third-party investors, he did not personally enjoy the proceeds of the resulting gain (beyond the increase in his compensation linked to the performance of the Paragon Fund).  On the other hand, although Contorinis did not pocket the profits from his trades, it was he who utilized the inside information, executed the trades, and secured the resulting profit for the benefit of his clients.  The question is thus posed whether an insider trader can be required to disgorge not only the profit that he personally enjoyed from his exploitation of inside information, but also the profits of such exploitation that he channeled to friends, family, or clients.  Contorinis argues, in effect, that one can only "disgorge" what one has personally "swallowed"; the SEC argues that a fraudster should be compelled to return not only those profits from the fraud that he has reserved for his own use, but also those that he has bestowed on others.

In resolving this dispute, we do not write on a clean slate.  Our prior cases indicate that an insider trader may be ordered to disgorge not only the unlawful

10

gains that accrue to the wrongdoer directly, but also the benefit that accrues to

third parties whose gains can be attributed to the wrongdoer's conduct.  We have

long applied that principle in the tipper-tippee context.  Thus, in SEC v. Warde

we held that, in the determination of a disgorgement amount, "[a] tippee's gains

are attributable to the tipper, regardless whether benefit accrues to the tipper."

151 F.3d 42, 49 (2d Cir. 1998).  That principle has deep roots in parallel civil

remedial structures.  For example, in Elkind v. Ligget & Myers, Inc., 635 F.2d 156,

165 (2d Cir. 1980), we concluded that "[t]rades by tippees are attributed to the

tipper" in determining liability for damages, and in SEC v. Texas Gulf Sulphur

Co., 446 F.2d 1301, 1308 (2d Cir. 1971), the foundational case for insider trading

liability, we required a tipper to make common-law civil restitution "for the

profits derived by his tippees."[2]

---

[2]  In his dissenting opinion, Judge Chin attempts to distinguish the instant case
from our prior cases involving tippers by suggesting that tippers can be held
liable for tippees' gains because "the tipper and tippee are concerted actors,
jointly engaging in fraudulent activity."  Dissent, post, at 5.  We respectfully
disagree.  We have found tippers liable for tippees' gains without any indication
that the tippee acted in culpable concert with the tipper.  See, e.g., SEC v. Tex.
Gulf Sulphur Co., 401 F.2d 833, 852-53 (2d Cir. 1968) ("As [defendant tipper's]
'tippees' are not defendants in this action, we need not decide whether, if they
acted with actual or constructive knowledge that the material information was
undisclosed, their conduct is as equally violative of [Rule 10b-5] as the conduct of
their insider source, though we note that it certainly could be equally

That rule makes perfect sense.  A potential tipper in possession of inside information who seeks to confer a benefit on a friend or to curry favor with someone who can confer reciprocal benefits in the future can do so either by trading on this information himself and passing the *profit* on to the intended beneficiary, or by passing the *information* to the beneficiary and thus allowing the tippee to realize the profit himself.  In the former case, the insider would unquestionably be liable to disgorge the profit; disgorgement is required whether the insider trader has put his profits into a bank account, dissipated them on transient pleasures, or given them away to others.[3]  It would make little sense to

_____

reprehensible"); Tex. Gulf Sulphur, 446 F.2d at 1308 (in further legal proceedings, same defendant tipper required to "make restitution for the profits derived by his [non-defendant] tippees"); Elkind, 635 F.2d at 161 (tipper corporation held liable for tippee traders' gains, even where non-party tippee traders' culpability was never addressed).  Similarly, in Warde, 151 F.3d at 49, the defendant was required to disgorge proceeds accruing to his wife's account, without any indication his wife acted in concert with him.  Thus, the fact that "the Fund did not act in concert with Contorinis," Dissent, post, at 7, has no bearing on whether Contorinis can be held liable for the unlawful gains that he made on the Fund's behalf.

[3] One ramification of this line of reasoning is that we have long deemed specific tracing unnecessary in ordering disgorgement for securities fraud.  See Bronson, 654 F.3d at 374 (articulating the principle and collecting cases); see also SEC v. Banner Fund Int'l, 211 F.3d 602, 617 (D.C. Cir. 2000) ("[D]isgorgement is an equitable obligation to return a sum equal to the amount wrongfully obtained, rather than a requirement to replevy a specific asset").

allow the insider to escape disgorgement when he gives away not the proceeds of a trade predicated on his insider knowledge, but rather the knowledge itself to others who he knows will spin the information into gold by trading on it themselves.

But if that is so, and our precedents confirm that it is, it must follow that the insider who, rather than passing the tip along to another, directly trades for that other's account must equally disgorge the benefit he obtains for his favored beneficiary. Indeed, that was the actual situation in Warde, in which the defendant utilized an account belonging to his wife, over which he had control, to make trades based on material nonpublic information. 151 F.3d at 49. Whether he traded on his own account and gave the profit to his wife, gave the information to his wife to enable her to trade on it, or executed the trades on his own authority using his wife's account such that the proceeds accrued to her, the wrong committed by the defendant would be the same, as would the economic result. Whether the defendant's motive is direct economic profit, self-aggrandizement, psychic satisfaction from benefitting a loved one, or future profits by enhancing one's reputation as a successful fund manager, the insider trader who trades for another's account has engaged in a fraud, secured a benefit thereby, and directed the profits of the fraud where he has chosen them to go.

13

Thus, given our precedent establishing that tippers may be held liable to disgorge the gains of their tippees, it would be inconsistent to deny the district court the discretion to impose equivalent liability for conduct such as Contorinis's. Indeed, to the extent that this case can be distinguished from the tipper-tippee situation, the case for disgorgement is stronger here. The tipper in possession of material nonpublic information who passes that inside information to another, even with full knowledge that the tippee will use the information to trade, has no control over, and likely no knowledge of, the extent to which the tippee will trade. The tippee may make a modest wager or take a deep plunge; she may act at the ideal moment, or sacrifice some potential profit by trading prematurely or delaying too long. The tipper is liable for the tippee's gains, whatever they may be.

In contrast, Contorinis had *greater* control over the Paragon Fund's illegal profits than a tipper does over a tippee. Contorinis both obtained the inside information that facilitated the illegal trade and executed the trade on behalf of the Paragon Fund. He controlled the size and timing of the trades, and was then entirely responsible for the size of the Paragon Fund's gains. Moreover, it was Contorinis's *business* to make trades on behalf of the Paragon Fund. Not only did

14

he profit directly from the additional incentive compensation he received based on his successful (but corrupt) trades, but by making profitable trades on behalf of his clients he enhanced his reputation and increased the likelihood of his receiving future benefits as a fund manager.  In this way, Contorinis's case is even closer than a tipper's to the bedrock disgorgement case of the insider who executes illegal trades using his own money, and donates the profit to a third party.  There is no injustice, therefore, in making him responsible for the profits he made for others, as well as for himself, through his fraudulent insider trades.

It thus necessarily follows from existing Circuit precedent, and from the logic of the disgorgement remedy, that Contorinis may be held responsible for disgorgement of the Paragon Fund's illegal profits.  To conclude otherwise would permit greater liability in a relationship (tipper-tippee) which is, in all material respects, more tenuous than the relationship here (controlling manager-financial vehicle).  Our conclusion is required to maintain consistency in the remediation of securities law violations.

We thus conclude that the district courts possess discretion to allocate disgorgement liability for insider trading to those responsible for the illegal acts, including to those with investment power over third-party accounts used to

15

make illegal investments as well as to tippers.  Our conclusion prevents insider

traders from evading liability by operating through or on behalf of third parties.

As we said in <u>Warde</u>, in the absence of the discretion to allocate liability to

wrongdoers, "[t]he value of the rule in preventing misuse of inside information

would be virtually nullified [because] those in possession of such information,

although prohibited from trading for their own accounts, [would be] free to use

the inside information on trades to benefit their families, friends, and business

associates."  151 F.3d at 49.  <u>See</u> <u>also</u> <u>Tex. Gulf Sulphur</u>, 446 F.2d at 1308

("[W]ithout such a remedy, insiders could easily evade their duty to refrain from

trading on the basis of inside information.  Either the transactions so traded could

be concluded by a relative or an acquaintance of the insider, or implied

understandings could arise under which reciprocal tips between insiders in

different corporations could be given.").

    We do not conclude that district courts *must* impose disgorgement liability

for insider trading upon wrongdoers when the gains accrue to innocent third

parties, but rather that the district courts *may* elect to do so in appropriate

16

circumstances.[4]  It is well established that district courts have broad discretion to

impose disgorgement liability, <u>First Jersey</u>, 101 F.3d at 1474-75, and that liability

should fall upon the wrongdoer in cases of uncertainty.  "The amount of

disgorgement ordered need only be a reasonable approximation of profits

causally connected to the violation. . . .  [A]ny risk of uncertainty in calculating

disgorgement should fall upon the wrongdoer whose illegal conduct created that

uncertainty."  <u>Id</u>. at 1475, quoting <u>SEC v. Patel</u>, 61 F.3d 137, 139-40 (2d Cir. 1995)

(internal citation, quotation marks, and alterations in <u>First Jersey</u> omitted).

     Contorinis's argument that he should be forced to disgorge only the

amounts that he directly obtained as personal pecuniary benefit seeks to

---

[4] When certain conditions are met, innocent third parties ("relief defendants")
may be ordered to disgorge the proceeds generated by the illegal conduct of a
fraudulent investor.  However, imposing such liability upon innocent third
parties is elective rather than mandatory.  <u>See</u>, <u>e.g.</u>, <u>SEC v. Cavanagh</u>, 155 F.3d
129, 136 (2d Cir. 1998) ("<u>Cavanagh I</u>") ("Federal courts *may* order equitable relief
against a person who is not accused of wrongdoing in a securities enforcement
action where that person: (1) has received ill-gotten funds; and (2) does not have
a legitimate claim to those funds.") (emphasis added).  Here the SEC could have
sought to recover illegal gains from the Paragon Fund as a relief defendant, but
chose, as our case law has indicated is an established and legitimate alternative,
to seek damages from the wrongdoer Contorinis directly.  While many factors
may be relevant to deciding what remedies are appropriate in particular
circumstances, we note that one argument in favor of requiring disgorgement
from the trader is that he is culpable, while the third-party recipients, though
unjustly enriched, may have been unaware of any wrongdoing.

undermine this discretion by conflating a central, well-established principle in

disgorgement law – that "the court may only exercise its equitable power only

over property causally related to the wrongdoing," <u>SEC v. First City Fin. Corp.</u>,

890 F.2d 1215, 1231 (D.C. Cir. 1989) – with the proposition, unsupported in our

case law, that the wrongdoer need disgorge only the financial benefit that accrues

to him personally.[5]  Yet as our consideration of the tipper-tippee context

---

[5]  No other circuit has spoken to the precise question of disgorgement liability for an insider trader who had trading power but not disbursement control over a financial vehicle whose funds were used to perpetuate the fraud.  Circuits which have considered related issues are mixed regarding the extent to which a party can be ordered to disgorge total gain from an unlawful act, when the party has not personally received the full benefit of the wrongdoing.  A district court in the Sixth Circuit concluded that "[w]hen addressing the amount of money [from fraudulent securities transactions] that a defendant must disgorge, the Sixth Circuit has held, by implication, that the entire amount of profits which were illicitly received must be disgorged."  <u>SEC v. Great Lakes Equities Co.</u>, 775 F. Supp. 211, 214 (E.D. Mich. 1991).  The court further stated

> [t]he benefit or unjust enrichment of a defendant includes not only what it gets to keep in its pocket after the fraud, but also the value of the other benefits the wrongdoer receives through the scheme.  Thus, in insider trading cases, a tipper must disgorge not only his own profits but also any profits made by his tippees, even if the tipper did not receive any tangible kickback from those tippees.

<u>Id</u>.  To support this proposition, the district court cited, inter alia, <u>SEC v. Blavin</u>, which states that "[d]isgorgement orders are not limited to the confiscation of trading profits . . . The district court was well within its equitable power to 'make violations unprofitable' . . . ."  760 F.2d 706, 713 (6th Cir. 1985), quoting <u>SEC v. Manor Nursing Ctrs., Inc.</u>, 458 F.2d 1082, 1104 (2d Cir. 1972).  <u>See also</u> <u>SEC v. Sierra Brokerage Servs. Inc.</u>, 608 F. Supp.

demonstrates, that proposition is without foundation.  The amount a court may

order a wrongdoer to disgorge may not exceed the total amount of gain from the

illegal action, but that does not entail that the gain must personally accrue to the

wrongdoer.  As our consideration of the tipper context demonstrates, to so limit

the power of courts to order disgorgement would permit evasion of the

prohibition on insider trading by allowing the direction of benefits to

acquaintances.

---

2d 923, 968 (S.D. Ohio 2009), quoting Great Lakes Equities and citing Blavin to support
the proposition that, by controlling Sixth Circuit precedent, a violator can be ordered to
disgorge the entire amount of profits.  Outcomes in the Ninth Circuit suggest that a
defendant's obligation to disgorge all profits depends upon the defendant's level of
responsibility for the unlawful enrichment.  Where an unjustly enriched defendant was
unaware of the illicit conduct of the wrongdoing third party, the court limited the
disgorgement to an amount "approximately equal to the unjust enrichment" enjoyed by
the defendant.  Hateley v. SEC, 8 F.3d 653, 656 (9th Cir. 1993).  However, where a
defendant had violated securities laws and enjoyed "substantial personal benefit from
the infusion of the illegally obtained proceeds" into a third party's account, the court
concluded the violator could be required to disgorge the total profit from the illegal
conduct.  SEC v. First Pac. Bancorp, 142 F.3d 1186, 1192 (9th Cir. 1998).  In contrast, the
Fifth Circuit has vacated a district court's order that individual, knowing participants in
an illegal securities scheme disgorge amounts beyond their personal gain, limiting each
violator's disgorgement to "the amount of the fee realized by each defendant for his
assistance in executing the fraud."  SEC v. Blatt, 583 F.2d 1325, 1336 (5th Cir. 1978).  The
Fifth Circuit stated "[t]he court's power to order disgorgement extends only to the
amount with interest by which the defendant profited from his wrongdoing.  Any
further sum would constitute a penalty assessment."  Id. at 1335.

Moreover, limiting disgorgement amounts to the direct pecuniary benefit enjoyed by the wrongdoer would run contrary to the equitable principle that the wrongdoer should bear the risk of any uncertainty affecting the amount of the remedy.  A wrongdoer's unlawful action may create illicit benefits for the wrongdoer that are indirect or intangible.  Because it would be difficult to quantify the advantages of an enhanced reputation or the psychic pleasures of enriching a family member, to require precise articulation of such rewards in calculating disgorgement amounts would allow the wrongdoer to benefit from such uncertainty.  As our precedents make clear, the risk of uncertainty in the amount of disgorgement is not properly so allocated.  See First Jersey, 101 F.3d at 1475; Patel, 61 F.3d at 140.  That is not to say the amount of disgorgement a court can order from a wrongdoer is bounded only by the court's discretion; to the contrary, it is set at the maximum of the total gain from the illicit action.  Here, that is precisely that amount of gain that the district court ordered disgorged.  Contorinis wishes us to replace that limit on disgorgement amounts – established both by precedent and by the logic of disgorgement – with a new principle that would limit the maximum disgorgement amount to the direct pecuniary benefit to the wrongdoer.  We decline to do so.

20

Contorinis further argues that our recent decision in his criminal appeal

limiting the extent of the criminal forfeiture to his personal gain, Contorinis, 692

F.3d at 147-148, should be applied in the civil disgorgement context.  That

argument is unavailing.  As we noted in deciding Contorinis's criminal appeal,

criminal forfeiture "serves no remedial purpose, is designed to punish the

offender, and cannot be imposed upon innocent owners."  Id. at 146, quoting

United States v. Bajakajian, 524 U.S. 321, 332 (1998).  Disgorgement, in contrast, is

a civil remedy which serves the remedial purpose of preventing unjust

enrichment.

Thus, while both criminal forfeiture and disgorgement serve to deprive

wrongdoers of their illicit gain, the two remedies reflect different characteristics

and purposes – disgorgement is an equitable remedy that prevents unjust

enrichment, and criminal forfeiture a statutory legal penalty imposed as

punishment.  See SEC v. Lorin, 869 F. Supp. 1117, 1121 (S.D.N.Y. 1994) ("I will not

label disgorgement a 'fine, penalty, or forfeiture' in light of the operation of

disgorgement, which merely deprives one of wrongfully obtained proceeds"),

citing Tex. Gulf Sulphur, 446 F.2d at 1308; see also SEC v. Williams, 884 F. Supp.

28, 30-31 (D. Mass. 1995) (holding the same and collecting cases).  One

ramification in particular of this qualitative divergence between disgorgement

and criminal forfeiture nullifies Contorinis's argument.  As disgorgement is

designed to equitably deprive those who have obtained ill-gotten gains of

enrichment, it may be imposed upon innocent third parties who have received

such ill-gotten funds and have no legitimate claim to them.  Cavanagh I, 155 F.3d

at 136, citing SEC v. Colello, 139 F.3d 675, 677 (9th Cir. 1998).  That is consistent

with disgorgement's remedial purpose – disgorgement is imposed not to punish,

but to ensure illegal actions do not yield unwarranted enrichment even to

innocent parties.

However, unjust enrichment may also be prevented by requiring the

violator to disgorge the unjust enrichment he has procured for the third party.

As our case law has indicated (and as our opinion here confirms), when third

parties have benefitted from illegal activity, it is possible to seek disgorgement

from the violator, even if that violator never controlled the funds.  The logic of

this, as more fully articulated *supra*, is that to fail to impose disgorgement on such

violators would allow them to unjustly enrich their affiliates.  Thus, ordering a

violator to disgorge gain the violator never possessed does not operate to

magnify penalties or offer an alternative to fines, but serves disgorgement's core

remedial function of preventing unjust enrichment.  District courts possess the

equitable discretion to determine whether disgorgement liability should fall upon

third parties or violators, a responsibility concordant with the district courts'

broad discretion to assay disgorgement more generally.

Moreover, unlike disgorgement, which is a discretionary, equitable

remedy, criminal forfeiture is mandatory, and a creature of statute.  Thus, unlike

the criminal forfeiture case, the district court's discretion in determining

disgorgement is not confined by precise contours of statutory language, but

rather serves the broader purposes of equity.  There is nothing inequitable about

requiring a person who created an unjust gain by fraudulently trading on

material nonpublic information, and allocated that gain, for reasons of his own,

to beneficiaries that he chose, to return that gain to the public by disgorging the

illegal benefits he obtained and directed.

Therefore, the substantive distinctions between the liability imposed by the

disgorgement remedy and the criminal forfeiture penalty, and the subsequently

differing impacts on violators, reflect the diversity of corrective action necessary

to enforce the securities regime.  As forfeiture is punitive in nature, it would be

irrational to impose it upon innocent third parties, whereas disgorgement's

23

purpose – the prevention of unjust enrichment – would be thwarted if securities law violators were able to pass their illicit gains off to affiliates.  To expect the same outcomes from legal concepts with such different characteristics is unrealistic, and Contorinis's efforts to analogize his criminal forfeiture penalty and disgorgement remedy are unavailing.

We therefore conclude that the district court did not abuse its discretion in requiring Contorinis to disgorge profits of $7,260,604 obtained by the Paragon Fund through his illegal insider trading.

II.    Payment of Prejudgment Interest

Contorinis additionally challenges the district court's order requiring him to pay $2,417,940 in prejudgment interest, reflecting interest that has accrued on the entire disgorgement amount.  A decision to grant prejudgment interest is "confided to the district court's broad discretion, and will not be overturned on appeal absent an abuse of that discretion."  Endico Potatoes, Inc. v. CIT Group/Factoring, Inc., 67 F.3d 1063, 1071-72 (2d Cir. 1995), quoting Commercial Union Assurance Co. v. Milken, 17 F.3d 608, 613-14 (2d Cir. 1994).  The decision to award prejudgment interest is governed by the equities, reflecting "considerations of fairness" rather than "a rigid theory of compensation," Blau v.

24

Lehman, 368 U.S. 403, 414 (1962), and we have concluded that the failure of

securities law violators to enjoy a profit "does not, standing alone, make it

inequitable to compel them to pay interest."  Rolf v. Blyth, Eastman Dillon & Co.,

Inc., 637 F.2d 77, 87 (2d Cir. 1980).

　　　Prejudgment interest on a disgorgement amount is intended to deprive the

wrongdoer of the benefit of holding the illicit gains over time by reasonably

approximating the cost of borrowing such gain from the government.  First

Jersey, 101 F.3d at 1476.  Our cases suggest, and Contorinis acknowledges,

Appellant's R. Br. at 22, that the amount on which a violator must pay

prejudgment interest usually tracks the amount that the party is ordered to

disgorge.  Whether or not a party personally enjoyed the gains from the illegal

action does not alter this principle, see, e.g., Warde, 151 F.3d at 50 (prejudgment

interest awarded on entire amount of gain from violator's wrongdoing, even

though he did not enjoy that amount directly), and courts have required tippers

who have been ordered to disgorge their tippees' gains – the very context to

which we have analogized Contorinis's conduct in our analysis *supra* – to pay

prejudgment interest on those gains.  See, e.g., SEC v. Aragon Capital Mgmt.,

LLC, 672 F. Supp. 2d 421, 444-45 (S.D.N.Y. 2009), rev'd on other grounds and

25

aff'd in relevant part, <u>SEC v. Rosenthal</u>, 650 F.3d 156, 157 n.1 (2d Cir. 2011); <u>SEC v. Tome</u>, 638 F. Supp. 638, 639-40 (S.D.N.Y. 1986).  As we have discussed above, it is within the district court's equitable discretion to order Contorinis to disgorge the Paragon Fund's gains even though he did not personally enjoy them, and for parallel reasons we detect no abuse of discretion by the district court in ordering him to pay prejudgment interest on that amount.

III.     <u>Injunction against Future Violation of Securities Laws</u>

Finally, Contorinis appeals from the district court's decision to permanently enjoin him from future violations of the securities laws.  We review a district court's decision regarding imposition of such injunctive relief for abuse of discretion.  <u>SEC v. Bausch & Lomb, Inc.</u>, 565 F.2d 8, 18 (2d Cir. 1977).  Here, the district court reviewed the standard by which injunctions are applied, assessed Contorinis's conduct – noting in particular that his offense consisted of multiple profitable illegal trades made over the course of several weeks – and deemed that an injunction was appropriate.[6]  We furthermore observe that Contorinis

---

[6] District courts are more likely to deem injunctive relief inappropriate when sentencing relatively naive offenders whose illegal behavior does not suggest calculating and carefully premeditated fraud.  <u>See</u>, <u>e.g.</u>, <u>SEC v. Yun</u>, 148 F. Supp. 2d 1287, 1294 (M.D. Fla. 2001) (denying injunctive relief where defendant was wife of executive who tipped friend regarding possible stock price changes in husband's

continues to deny having engaged in insider trading, Joint App. at 286,

suggesting a lack of remorse and supporting further measures to deter future

wrongdoing of a like type.[7]  We thus identify no abuse of discretion in the district

court's decision.

## CONCLUSION

Because the district court did not abuse its discretion in ordering

disgorgement, calculating the disgorgement amount, granting prejudgment

interest on the disgorgement amount, and imposing a permanent injunction

prohibiting Contorinis from future violations of the securities laws, the judgment

of the district court is hereby AFFIRMED.

---

company at a party).  In contrast, Contorinis is an investment professional who engaged
in a sophisticated scheme of insider trading with multiple episodes.

[7]  Contorinis argues that the district court's statements at his criminal sentencing, Joint
App. at 343-44, that "I don't think there is any chance that you are going to commit
crimes in the future" and that his insider trading scheme was "relatively isolated,"
suggest that the injunction imposed at his civil trial comprised an abuse of discretion.
However, these statements must be read in the context of a criminal sentencing
proceeding in which the court was considering possible grounds for leniency in
sentencing, not the need to impose a civil injunction.

12-1723-CV
*SEC v. Contorinis*

DENNY CHIN, *Circuit Judge:*

In this case, the district court ordered defendant-appellant Joseph

Contorinis to "disgorge" $7.2 million in "profits."  The profits were not his,

however, and the monies were never in his possession or control.  Instead they

were earned by the fund by which he was employed (the "Fund").  The majority

nonetheless affirms.  I respectfully dissent, for the district court's order is, in my

view, inconsistent with both the nature and purpose of disgorgement as well as

our decision in the related criminal case, *United States v. Contorinis*, 692 F.3d 136

(2d Cir. 2012).

Disgorgement is an equitable remedy that requires "a defendant to

*give up* the amount by which *he* was unjustly enriched."  *SEC v. First Jersey Sec.,*

*Inc.*, 101 F.3d 1450, 1475 (2d Cir. 1996) (emphases added).  Its primary purpose "is

to deprive violators of their ill-gotten gains."  *Id.* at 1474; *accord SEC v. Fischbach*

*Corp.*, 133 F.3d 170, 175 (2d Cir. 1997) ("As an exercise of its equity powers, the

court may order wrongdoers to disgorge their fraudulently obtained profits.").

The amount of disgorgement "is determined by the amount of profit realized by

the defendant."  *SEC v. AbsoluteFuture.com*, 393 F.3d 94, 96 (2d Cir. 2004); *accord*

*SEC v. Cavanagh*, 445 F.3d 105, 116 (2d Cir. 2006) ("The remedy consists of . . . the amount of money acquired through wrongdoing.").  Disgorgement thus should have the effect of returning a defendant to his status quo prior to the wrongdoing, *SEC v. Tome*, 833 F.2d 1086, 1096 (2d Cir. 1987) ("The paramount purpose of enforcing the prohibition against insider trading by ordering disgorgement is to make sure that wrongdoers will not profit from their wrongdoing."), and a court may not order disgorgement above "the amount of money acquired through wrongdoing."  *Cavanagh*, 445 F.3d at 117.

Here, the district court ordered Contorinis to pay an amount substantially above what he acquired through his wrongdoing.  The district court ordered him to disgorge funds he never had and to pay back profits he never received.  Instead of returning Contorinis to his status quo prior to his wrongdoing, the district court's disgorgement order penalized him by requiring him to pay an amount equal to the $7.2 million in profits earned by the Fund and an additional $2.5 million in prejudgment interest.

Disgorgement, however, is not intended to be punitive; it is remedial in nature.  *See Official Comm. of Unsecured Creditors of WorldCom, Inc. v. SEC*, 467 F.3d 73, 81 (2d Cir. 2006) ("'Disgorgement merely requires the return of

wrongfully obtained profits; it does not result in any actual economic

penalty . . . .'") (quoting H.R. Rep. No. 101-616 (1990)); *accord Cavanagh*, 445 F.3d

at 116, 117 n.25 ("Because the [disgorgement] remedy is remedial rather than

punitive, the court may not order disgorgement above [the amount of money

acquired through the wrongdoing]."); *SEC v. Wyly*, 860 F. Supp. 2d 275, 277

(S.D.N.Y. 2012) ("[A]wards that exceed the defendant's gains are punitive and

beyond the court's equitable powers.").  As the district court's order had the

effect of punishing Contorinis for his wrongdoing, it went beyond the

permissible scope of disgorgement.  While Contorinis undeniably deserved to be

punished, disgorgement was not the proper mechanism to be used to impose

that punishment.

The district court's disgorgement order is also inconsistent with our

decision in the related criminal case, *United States v. Contorinis*, 692 F.3d 136 (2d

Cir. 2012).  There, we held that Contorinis could not be required to forfeit profits

that the Fund earned from his illegal use of inside information.  Our holding

rested on the principle that a defendant can be ordered to forfeit only the

proceeds that he actually received or controlled.  Because Contorinis never

received or controlled the proceeds sought by the government, we concluded

that Contorinis could not be ordered to forfeit those proceeds. *Id.* at 147. Now, in this civil proceeding involving the same defendant, the same investment fund, and the same proceeds, the majority reaches the opposite result, holding that Contorinis must "disgorge" the Fund's profits and forfeit millions of dollars that he never received.

To be sure, as the majority discusses, there are differences between criminal forfeiture and civil disgorgement. But conceptually they are largely the same. We even used the terms together in *Contorinis* as we explained that: "Criminal forfeiture focuses on the *disgorgement* by a defendant of his 'ill-gotten gains.'" 692 F.3d at 146 (emphasis added) (*quoting United States v. Kalish*, 626 F.3d 165, 170 (2d Cir. 2010)); *see also United States v. Ursery*, 518 U.S. 267, 284 (1996) (forfeiture is "designed primarily to confiscate property used in violation of the law, and to require *disgorgement* of the fruits of illegal conduct") (emphasis added). Both forfeiture and disgorgement seek to force a defendant to give up -- that is, to forfeit or to disgorge -- what he has wrongfully gained. Thus, we held that the district court had erred in ordering Contorinis "to forfeit funds that were never possessed or controlled by himself or others acting in concert with him." 692 F.3d at 148; *see id.* at 147 ("[E]xtending the scope of a forfeiture to include

- 4 -

proceeds that have never been acquired either by a defendant or his joint actors would be at odds with the broadly accepted principle that forfeiture is calculated based on a defendant's gains.").

       *Contorinis* is also instructive with respect to the majority's reliance on the tipper-tippee cases that hold that "[a] tippee's gains are attributable to the tipper, regardless whether benefit accrues to the tipper." *SEC v. Warde*, 151 F.3d 42, 49 (2d Cir. 1998). We acknowledged in *Contorinis* that "a court may order a defendant to forfeit proceeds received by others who participated jointly in the crime, provided the actions generating those proceeds were reasonably foreseeable to the defendant." 692 F.3d at 147. We observed that "[t]he extension of forfeiture to proceeds received by actors in concert with a defendant may be deemed to be based on the view that the proceeds of a crime jointly committed are within the possessory rights of each concerted actor." *Id*. We concluded, however, that "[t]his view does not support an extension to a situation where the proceeds go directly to an innocent third party and are never possessed by the defendant." *Id.* This reasoning applies with equal force here.

       In the tipper-tippee situation, the tipper and tippee are concerted actors, jointly engaging in fraudulent activity -- the tipper breaches a fiduciary

- 5 -

duty by disclosing inside information; the tippee trades on that information, knowing of the breach and without disclosing what he knows; and the tipper obtains "a direct or indirect personal benefit from the disclosure, such as a pecuniary gain or a reputational benefit that will translate into future earnings." *Dirks v. SEC*, 463 U.S. 646, 663 (1983); *see also, e.g., Warde*, 151 F.3d at 47 (SEC must establish that tippee "knew or should have known that [tipper] violated a relationship of trust by relaying [the] information"); *SEC v. Hughes Capital Corp.*, 124 F.3d 449, 455 (3d Cir. 1997) ("Courts have held that joint-and-several liability is appropriate in securities cases when two or more individuals or entities collaborate or have close relationships in engaging in the illegal conduct."); *First Jersey Sec.*, 101 F.3d at 1475 (holding that owner-officer who collaborated in unlawful conduct of firm may be held jointly and severally liable with firm for disgorgement of unlawful gains received); *SEC v. Monarch Fund*, 608 F.2d 938, 942 (2d Cir. 1979) (distinguishing "tippee who knows or ought to know that he is trading on inside information" from "outsider who has no reason to know he is trading on the basis of such knowledge"). A tipper can be held responsible for the tippee's profits because both joint actors are deemed to be in possession or control of the proceeds of their concerted activity. *Contorinis*, 692 F.3d at 147.

- 6 -

We do not have a tipper-tippee relationship here.  Contorinis was not a tipper.  Nor is there any evidence that the Fund knew that Contorinis breached any duty when he made his investment decisions.  As we concluded in the criminal case, the Fund did not act in concert with Contorinis in his criminal venture, and he never possessed or controlled its profits.  *See* 692 F.3d at 147 ("we hold that the district court erred in ordering [Contorinis] to forfeit funds that were never possessed or controlled by himself or others acting in concert with him").  Hence, the Fund's gains were not properly included in the disgorgement calculation.

For all these reasons, I believe the district court abused its discretion in ordering Contorinis to disgorge the profits the Fund accrued as a result of his criminal activity.  Accordingly, I would vacate and remand the judgment of the district court for recalculation of the amounts of disgorgement and pre-judgment interest.[1]

---

[1]    As we noted in *Contorinis*, the district court could require Contorinis to disgorge monies he acquired as a result of his criminal conduct, including "salaries, bonuses, dividends, or enhanced value of [his] equity in the Fund."  692 F.3d at 148 n.4.  The Securities and Exchange Commission could also have sought disgorgement from the Fund on the theory that, even though the Fund engaged in no wrongdoing, it was the recipient of "ill-gotten funds" to which it did not have a legitimate claim.  *See, e.g., SEC v. Cavanagh*, 155 F.3d 129, 136 (2d Cir. 1998).